GAGNON v GLOWACKI

Docket No. 303449. Submitted January 11, 2012, at Detroit. Decided
    March 6, 2012, at 9:05 a.m. Leave to appeal denied, 491 Mich 949.
  Randi Gagnon filed a motion in the Wayne Circuit Court seeking
    to change the domicile of her and Gary Glowacki's minor child
    from Plymouth, Michigan to Windsor, Ontario. The parties, who
    were never married, were awarded joint legal and joint physical
    custody of the minor child following his birth in 2005. The child
    primarily resided with Gagnon, with Glowacki having signifi-
    cant parenting time that he exercised on a consistent basis.
    Glowacki also exercised additional parenting time as much as
    possible, brought the child lunch, and took him out to eat and on
    vacations. Gagnon had been unemployed since the end of 2009,
    but had attempted to attend classes at different times. Because
    she lacked access to transportation, Gagnon had limited her job
    search to areas within walking distance of her deceased grand-
    mother's home where she resided, but had received no offers or
    call-backs. Gagnon's mother, who owned the house in which
    Gagnon lived, expressed an intent to sell the house because she
    could not afford to continue paying the mortgage. Gagnon relied
    on child support and public assistance to provide for herself and
    the minor child. Gagnon filed a motion to move to Windsor
    because she had a job offer there, her family still lived there,
    and she would have access to family cars and available daycare
    by her mother. The circuit court, Eric William Cholack, J.,
    granted the motion, finding that while an established custodial
    environment existed with both parents, it would not be affected
    by the move if Glowacki was given an additional weekend of
    parenting time each month and allowed to maintain his Tues-
    day and Thursday parenting time and if Gagnon was respon-
    sible for driving the child across the Canadian-American border.
    Glowacki appealed.

  The Court of Appeals *held*:

  1. A party to a custody order who requests a change of
domicile has the burden of establishing by a preponderance of
the evidence that the change is warranted. When a custody
order prohibits a parent from changing the minor child's legal

residence to a different state without the court's permission (for changes in domicile analysis, Canada is considered another state), the court must consider the factors in MCL 722.31(4) when making a decision. The court must consider whether the change in legal residence has the capacity to improve the quality of life for both the child and the relocating parent, the degree to which each parent has complied with the parenting-time aspect of the custody order and the extent to which the planned domicile change was inspired by that parent's desire to defeat or frustrate the parenting-time schedule, the degree to which the parenting-time schedule could be modified if the domicile change request was granted to preserve and foster the parental relationship between the child and each parent, the degree to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation, and whether any domestic violence is involved. An increase in a relocating parent's earning potential may improve a child's quality of life. Gagnon proved by a preponderance of the evidence that moving the child to Windsor was warranted, and the trial court's findings were not against the great weight of the evidence. The move had the capacity to improve the minor child's quality of life because Gagnon would have immediate employment, a support system, access to transportation, and free daycare by her family. Although weekday parenting may be more difficult for Glowacki after the move, increasing his weekend parenting time would provide a realistic opportunity to preserve and foster the parental relationship because the number of hours of parenting time remained essentially the same.

2. If a trial court grants a change of domicile it must determine whether there will be a change in the established custodial environment. If it results in a change in the custodial environment, the relocating parent must prove by clear and convincing evidence that the change is in the minor child's best interest. It is possible to have a change of domicile without a corresponding change in the established custodial environment. However, a change in established custodial environment will occur if it would turn a party into a weekend-only parent. The trial court's conclusion that the move would not change the established custodial environment was not against the great weight of the evidence. Glowacki was given an additional weekend each month and was allowed to maintain his current parenting time if desired, with Gagnon ordered to transport the child across the border for weekday visits. The potential loss of a weekday overnight and school-time lunches would not destroy

the established custodial environment. The trial court's finding that the extra weekend of parenting time each month would offset the lack of any weekday parenting if weekday visits became too difficult to continue was erroneous because such a change would alter the established custodial environment by making him a weekend-only parent. However, because the trial court made it clear that it expected the weekday parenting to continue, its conclusion that the move would not alter the established custodial environment was not against the great weight of the evidence.

3.  The trial court was not required to determine whether the moving party proved by a preponderance of the evidence that the move was in the best interest of the minor child. A best-interest analysis under MCL 722.23 is not required when a movant has proven by a preponderance of the evidence that a change of domicile is warranted under MCL 722.31 and the relocation would not alter any established custodial environment. MCL 722.31(4) is a specific statute that applies to requests for a change of domicile of the minor child, and if the Legislature had wanted the best-interest factors of MCL 722.23 to be applied to the analysis of this issue they would have been referred to specifically.

Affirmed.

JANSEN, P.J., concurring in part and dissenting in part, concurred with the majority's conclusion that the circuit court did not err with regard to its evaluation of the change-of-residence factors of MCL 722.31(4) and its determination that plaintiff had met her burden of establishing by a preponderance of the evidence that the move to Windsor, Ontario was warranted. Judge JANSEN would have held, however, that the circuit court's determination that the move to Windsor would not alter the child's established custodial environment was against the great weight of the evidence because the reality of the time involved with crossing the Canadian-American border would most likely render Glowacki a weekend-only parent.

1. PARENT AND CHILD — CHILD CUSTODY — CHANGES OF CHILD'S DOMICILE OR RESIDENCE.

A party to a custody order who requests a change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted; when a custody order prohibits a parent from changing the minor child's legal residence to a different state without the court's permission, the court must consider the factors in MCL 722.31(4) when making a decision;

Canada is considered another state for changes in domicile analysis; under MCL 722.31(4) the court must consider whether the change in legal residence has the capacity to improve the quality of life for both the child and the relocating parent, the degree to which each parent has complied with the parenting-time aspect of the custody order and the extent to which the planned domicile change was inspired by that parent's desire to defeat or frustrate the parenting-time schedule, the degree to which the parenting-time schedule could be modified if the domicile change request was granted to preserve and foster the parental relationship between the child and each parent, the degree to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation, and whether any domestic violence is involved; an increase in a relocating parent's earning potential may improve a child's quality of life.

2. Parent and Child — Child Custody — Changes of Child's Domicile or Residence — Change in Established Custodial Environment Determination.

   If a trial court grants a change of domicile it must determine whether there will be a change in the established custodial environment; if the change of domicile results in a change in the custodial environment, the relocating parent must prove by clear and convincing evidence that the change is in the minor child's best interest; it is possible to have a change of domicile without a corresponding change in the established custodial environment; however, a change in established custodial environment will occur if it would turn a party into a weekend-only parent.

3. Child Custody — Changes of Child's Domicile or Residence — Best-Interest Factors Not Applicable.

   A best-interest analysis under MCL 722.23 is not required when a movant has proven by a preponderance of the evidence that a change of domicile is warranted under MCL 722.31 and the relocation would not alter any established custodial environment; MCL 722.31(4) is a specific statute that applies to requests for a change of domicile of the minor child, and if the Legislature had wanted the best-interest factors of MCL 722.23 to be applied to the analysis of this issue they would have been referred to specifically.

*Plunkett Cooney* (by *Robert G. Kamenec*) for Randi Gagnon.

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), for Gary Glowacki.

Before: JANSEN, P.J., and WILDER and K. F. KELLY, JJ.

WILDER, J. Defendant appeals as of right the trial court's order granting plaintiff's request to change the domicile of their minor child from Michigan to Windsor, Ontario. We affirm.

### I. BASIC FACTS

Plaintiff and defendant never married and had a son together, who was born on September 19, 2005. Around the time that the child was born, plaintiff and defendant stopped dating. Since birth, the child has lived with plaintiff in her grandmother's home in Plymouth. Defendant lives approximately 11½ miles away in Farmington Hills and is married. He and his wife have a child of their own, who was born in June 2010.

A court order awarded plaintiff and defendant joint legal and joint physical custody of their child. The order provided that the child would primarily reside with plaintiff, with defendant having parenting time every Tuesday and Thursday evening and alternate weekends. Additionally, defendant received an overnight with the child every other Thursday night.

Plaintiff worked as an assistant in a latch-key program in the Plymouth-Canton School district from 2003 until 2006, when she decided to quit because she determined that the cost of providing child care for her son was almost as much as her income. Plaintiff then became a nanny for her friend's children until the end

of 2009, which allowed her to take care of her son at the same time. During this time, plaintiff attempted to further her education by attending a paramedic class on Saturdays. Defendant would watch and care for their son while plaintiff was in class. Eventually, plaintiff quit to take care of her grandmother, who was in failing health.[1] In August 2007, plaintiff's car was repossessed because she could not afford to keep current with the payments. In 2009, she began to attend classes at a community college to study criminal justice. However, just a few months later, plaintiff lacked the means to get to the school because her friend would no longer allow her use of the friend's car. Consequently, plaintiff stopped attending the classes.

Plaintiff has tried to find other jobs in Michigan within walking distance of her home. Because of her desire to be home when the child was home, she limited her work availability to every other weekend and 12:30 p.m. to 3:30 p.m. Monday through Friday, when the child would either be with defendant or at preschool. Plaintiff did not receive any offers or call-backs.

Because of her lack of employment, plaintiff was relying on child support and public assistance from the state in the form of a bridge card. Because the monthly mortgage payment was $918 she could not continue to afford to live in her grandmother's home. After plaintiff's grandmother passed away, title in the home went to plaintiff's mother, who assumed the existing mortgage. Plaintiff was paying a portion of the mortgage ($500) each month to her mother. More recently, plaintiff has not been able to afford the $500, so her mother has been paying the full mortgage amount. Plaintiff's mother testified that she is unable to

---

[1] At some point later, not specified in the record, plaintiff's grandmother passed away.

continue paying the mortgage each month and that her intention is to sell the house.

Defendant is employed as a supervisor of the service department for an armored transport company and exercises additional parenting time as much as possible, bringing the child lunch, taking the child to Mc-Donald's, and going on vacations. Defendant and the child talk on the phone two or three times per day, with the child initiating many of the calls. Defendant did the majority of transporting the child to preschool with his wife helping occasionally. Defendant also has been taking the child to ice skating classes on Tuesday evenings, during his parenting time. And defendant testified that he and the child have an "extremely strong" relationship and that their bond is "unbreakable." Even plaintiff testified that the child "idolizes his father like a superhero. He loves his father." Plaintiff added that the child looks to defendant for guidance and discipline in his day-to-day life when the child is with him.

Because of plaintiff's lack of access to transportation, defendant has always done all of the driving to and from Plymouth for his parenting time. It takes approximately 15 minutes to drive from his home in Farmington Hills to plaintiff's home in Plymouth. Defendant also has taken the child to all of his doctor appointments and dentist appointments.

Plaintiff desires to move to Windsor, where she grew up and her entire family still resides. Plaintiff also testified that she would gain access to a car because her mother and her mother's husband[2] have four cars between them.[3] Furthermore, plaintiff has a job offer to work as a waitress at The Penalty Box, which is a

---

[2] Plaintiff's parents are divorced but still both reside in Windsor.

[3] Plaintiff's mother testified that she would only allow plaintiff to have access to a vehicle if she lived in Windsor.

restaurant in Windsor where her mother also works.
The job would be for 25 to 30 hours per week making
approximately $18 per hour, including tips. Plaintiff's
mother would be available to care for the child while
plaintiff was at work or school because she would quit
her job if necessary. Plaintiff plans to live with her
father in his three-bedroom house for a few weeks until
she is able to rent an apartment on her own. Addition-
ally, plaintiff plans for the child to attend St. Maria
Goretti Catholic Elementary School, which is located
near the home of her father.

On August 30, 2010, plaintiff filed a motion to change
the domicile of the child from Plymouth to Windsor.
After conducting a hearing, the trial court granted the
motion. In its order dated February 8, 2011, it found
that plaintiff successfully established by a preponder-
ance of the evidence that the move was warranted. It
also found that an established custodial environment
existed with both parents and that the established
custodial environment would not be affected with the
move "if Defendant were given an additional weekend
each month and were allowed to maintain his Tuesday
and Thursday parenting time sessions if desired." Be-
cause it found no change in the established custodial
environment, the trial court found it unnecessary to
consider any best-interest factors. The trial court also
ordered plaintiff to drop off and pick up the child in
Detroit for parenting time with defendant.

## II. CHANGE OF DOMICILE: MCL 722.31

Defendant first contends that the trial court erred by
addressing the change in legal residence factors set
forth in MCL 722.31(4) from the perspective of plaintiff,
rather than the child, and by improperly crediting some

of plaintiff's factual claims. Defendant also suggests that other factual findings of the trial court were erroneous. We disagree.

We review a decision on a petition to change the domicile of a minor child for an abuse of discretion. *Brown v Loveman*, 260 Mich App 576, 600; 680 NW2d 432 (2004). We review the trial court's findings in applying the MCL 722.31 factors under the great weight of the evidence standard. *Id.* "Under this standard, we may not substitute our judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *McKimmy v Melling*, 291 Mich App 577, 581; 805 NW2d 615 (2011).

Under MCL 722.31(1) "a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued" without court approval. Before allowing a change of legal residence, a court must consider the following factors in MCL 722.31(4):

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child

and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"The party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted." *McKimmy*, 291 Mich App at 582. In addition, MCL 722.31(4) requires that the trial court consider the factors "with the child as the primary focus in the court's deliberations."

On its face, MCL 722.31 is only applicable when a parent attempts to change the domicile of a child to a location that is over 100 miles away. However, when a child's custody is governed by a court order that prohibits the child from moving to another state without the permission of the court, as is the case here, regardless of the distance involved if the proposed residence change involves leaving the state, then the factors under MCL 722.31(4) are the proper criteria for the court to consider.[4] See *Mogle v Scriver*, 241 Mich App 192, 202-203; 614 NW2d 696 (2000).

With regard to MCL 722.31(4)(a), capacity to improve the quality of life for both the child and the relocating parent, the trial court found that the move would provide plaintiff with immediate employment, a support system, access to transportation, and free daycare by her family. The move would also make it more likely that plaintiff would "secure a steady income, return to school and pursue a brighter future. This could have a positive spillover effect on [the child]." The

---

[4] The parties do not dispute the application of MCL 722.31(4).

trial court also found insufficient evidence that the child would be harmed educationally by the move.

This Court has stated that "[i]t is well established that the relocating parent's increased earning potential may improve a child's quality of life." *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007). Thus, the trial court's finding in this case that improvement in plaintiff's income would have a spill-over effect on the child is not an improper application of the law. In addition, the finding is not against the great weight of the evidence. There was evidence that plaintiff was unemployed, did not have a vehicle, and relied on defendant's child support payments and assistance from the state of Michigan for her income. In Windsor, however, she had a job offer, access to a vehicle, and free childcare available. While, as defendant contends, the child may not have suffered from a lack of transportation or basic necessities while in Michigan, the trial court's finding that the move had the *capacity* to improve his quality of life was not against the great weight of the evidence.

The trial court's finding that the move would not detrimentally affect the child's education was also not against the great weight of evidence. First and foremost, the evidence comparing the Plymouth-Canton schools with the Windsor schools was not entirely relevant because even if the motion to change domicile was denied, plaintiff stated she would be moving out of the Plymouth home and there was no guarantee that she would remain in the Plymouth-Canton School District. Additionally, because Michigan and Ontario use different "proficiency standards" when evaluating their schools, the statistics presented were of "limited use." Defendant is correct when he states that the standard is whether the move has the capacity to *improve* the

plaintiff's and the child's life. However, the fact that the trial court found this particular fact neutral does not preclude a finding that the move *overall* had the capacity to improve their lives.

Finally, defendant's argument that plaintiff and her mother created the alleged crisis so that plaintiff could move to Windsor and make defendant a weekend parent ultimately involves credibility determinations, and this Court must defer to the trial court on issues of credibility. *Mogle*, 241 Mich App at 201. The trial court was free to believe the testimony of plaintiff and her mother regarding plaintiff's employment opportunities, the availability for plaintiff to use her mother's extra vehicle, her mother's inability to provide childcare in Michigan, and the need to sell the Plymouth residence. Therefore, when evaluating all of the above facts, we conclude that the trial court's finding that the move did have the capacity to improve the quality of life of both plaintiff and the child was not against the great weight of evidence.

With regard to MCL 722.31(4)(b), the trial court found that plaintiff's move was not inspired by a desire to deny defendant parenting time. The trial court found that plaintiff has frequently given defendant more parenting time than required by the court order, consented to additional parenting time in the summer, is willing to give defendant an extra weekend or overnight per month, and is willing to transport the child across the border for parenting time.

Although weekday parenting time may be more difficult after the move, the trial court's finding that plaintiff did not intend to frustrate defendant's parenting time is also not against the great weight of the evidence. Plaintiff offered defendant an additional weekend per month and offered to transport the child

across the border for parenting time. Moreover, as previously noted, there was testimony in the record that the plaintiff's family and friends were in Windsor, plaintiff would have access to transportation in Windsor, plaintiff would have employment in Windsor, and plaintiff would have access to free childcare in Windsor. This factor also involves a credibility determination, on which we must defer to the trial court. *Id.*

With regard to MCL 722.31(4)(c), the trial court found that providing defendant with an additional weekend of parenting time per month, even if weekday parenting time was negatively affected, could provide an adequate basis for preserving and fostering the parental relationship between defendant and the child. The trial court concluded that this could give defendant additional extended time, which could foster an even closer parent-child relationship. In addition, the trial court found that the parties' history of cooperation regarding parenting time suggested that they would comply with the modified order. Moreover, the trial court found that plaintiff agreed to subject herself to the jurisdiction of the court while in Canada, and as such the trial court would be able to ensure compliance with its orders. See *Brausch v Brausch*, 283 Mich App 339, 354; 770 NW2d 72 (2009).

For this factor, our inquiry is "whether the proposed parenting-time schedule provides 'a realistic opportunity to preserve and foster the parental relationship previously enjoyed' by the nonrelocating parent." *McKimmy*, 291 Mich App at 584, quoting *Mogle*, 241 Mich App at 204. Furthermore, "the visitation plan need not be equal to the prior visitation plan in all respects." *Brown*, 260 Mich App at 603.

The trial court's finding that the new parenting time schedule would provide an adequate basis for preserv-

ing and fostering the parent-child relationship is not against the great weight of the evidence. The parenting time schedule after the move is essentially the same as the parenting time schedule before the move, with defendant given an extra weekend per month.

The trial court found that factors (d) and (e) were not applicable. Neither plaintiff nor defendant disputes these findings on appeal, and we do not find that the findings were against the great weight of evidence.

After evaluating all the above factors, the trial court determined that plaintiff met her burden of establishing by a preponderance of the evidence that moving the child to Windsor was warranted. This ultimate finding is not against the great weight of evidence. In short, the capacity of the move to improve both plaintiff's and the child's lives was not outweighed by any possible negative ramifications associated with the move.

### III. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant next contends that the trial court erred by finding that the move would not change the established custodial environment with defendant and, therefore, failed to determine whether plaintiff proved by clear and convincing evidence that the move was in the best interest of the child. We disagree.

After granting a change of domicile, the trial court must determine whether there will be a change in the established custodial environment and, if so, determine whether the relocating parent can prove, by clear and convincing evidence, that the change is in the child's best interest.[5] *Id.* at 591.

According to MCL 722.27(1)(c),

---

[5] MCL 722.23 provides:

[t]he custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship should also be considered.

---

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

In *Brown*, this Court noted that it is possible to have a change of domicile without changing the established custodial environment. *Id.* at 596.

The parties do not dispute that an established custodial environment existed with both plaintiff and defendant. The trial court's finding that the move would not change the established custodial environment was not against the great weight of the evidence.

The trial court found that the established custodial environment with both parents would not change if defendant was given an additional weekend per month and was allowed to maintain his current parenting time if desired. The trial court further found that, even if defendant decided to no longer exercise Thursday overnights, defendant would have the same number of overnights per month as he does now (six). In addition, if defendant stopped weekday parenting time, the extra time that defendant would receive for the additional weekend (48 hours) is almost equivalent to the maximum number of weekday hours that defendant currently exercises (58 hours). Finally, the court found that with advance planning, defendant would also be able to continue to attend school-related events.

In this case, the new parenting-time schedule was essentially the same, with defendant being given an additional weekend per month. Defendant's argument stresses that plaintiff's move is more than a mere 17-mile move because it crosses international borders. Specifically, defendant argues that because of the inherent extra time needed for him to make such border crossings, his weekday parenting time will be so adversely affected that he may have to opt out of them for the benefit of the child. Defendant notes that if the move results in him becoming a weekend-only dad, then the established custodial environment the child has

with him would necessarily be affected. This argument has some merit; however, the trial court ordered plaintiff to transport the child across the border to facilitate the weekday parenting time. Thus, on the face of it, the bulk of defendant's concerns about diminished weekday parenting time are not warranted. While the move to Windsor likely means the end of spontaneous lunches during the week and Thursday overnights with defendant,[6] defendant still can have the Tuesday/Thursday evening parenting time. The loss of the weekday overnight and the lunches is insufficient to destroy the established custodial environment between the child and defendant. Therefore, the trial court finding that the established custodial environment would not change if defendant was given an extra weekend per month and continued to maintain his current parenting time was not against the great weight of the evidence. If the child continued to see his father on weekdays and an extra weekend per month, he would continue to look to his father for guidance, discipline, necessities, and comfort. See MCL 722.27(1)(c).

However, the trial court's finding that the extra weekend per month of parenting time would offset the lack of any weekday parenting time if weekday visits became too difficult to continue, is erroneous. On the contrary, if the move were to render defendant a weekend-only parent, a change in the established custodial environment would result. *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008). But this particular finding was not central to the trial court's ultimate conclusion. The trial court's order made it

---

[6] We acknowledge that the extra time involved with morning rush hour and crossing the international border would likely require the child to wake up unreasonably early to timely arrive at school on Friday, thereby making weekday overnights difficult.

clear that defendant would maintain his weekday parenting time. At another part of the opinion, the trial court found that plaintiff and defendant were likely to comply with a modified order. Thus, defendant is not made a weekend parent by the terms of the order, and the trial court's finding that the move would not change the established custodial environment was not against the great weight of the evidence.

### IV. CHILD'S BEST INTERESTS

Because there would be no change in the established custodial environment, the trial court was not required to determine whether plaintiff proved by clear and convincing evidence that the move was in the best interest of the child. See *Brown*, 260 Mich App at 590-591. However, defendant contends that, even if there was no change in the established custodial environment, the trial court was required to consider whether the move was in the best interest of the child, but at the lower preponderance of the evidence standard. We disagree.

Defendant's reliance on *Pierron v Pierron*, 486 Mich 81; 782 NW2d 480 (2010), is misplaced. *Pierron* did not specifically address a change of domicile under MCL 722.31. Instead, the *Pierron* Court was confronted with a situation where the parents, who had joint legal custody, could not agree regarding an important decision that affected the welfare of the child, specifically a change in the children's school.[7] In such instances, the court is responsible for resolving the issue in the child's best interests. MCL 722.25; *Pierron*, 486 Mich at 85. In *Pierron*, the plaintiff-father, the defendant-mother, and

---

[7] MCL 722.26a(7)(b) provides that the parents in a joint-custody setting "shall share decision-making authority as to the important decisions affecting the welfare of the child."

the children lived in Grosse Pointe Woods, with the children residing with the mother. The defendant later moved to Howell, which was 60 miles away,[8] and tried to enroll their children in Howell schools. The plaintiff objected to the children changing school districts and moved to have the courts decide the issue. The Supreme Court concluded that because the change would not modify the established custodial environment, the defendant did not have to prove by clear and convincing evidence that the change was in the best interests of the children. Rather, the Court stated that the "defendant is required to prove by a preponderance of the evidence that the proposed change of schools would be in the best interests of the children, using the best-interest factors identified in MCL 722.23." *Pierron*, 486 Mich at 89-90. In the present case, defendant invites us to extend this requirement to all change of domicile cases under MCL 722.31, when there also is no change to the established custodial environment. We decline the invitation.

This Court has repeatedly held that if a movant can establish that a relocation of domicile under MCL 722.31 is warranted by a preponderance of the evidence *and* the relocation would not alter any established custodial environment, then no best-interest analysis is necessary. *Spires v Bergman*, 276 Mich App 432, 437 n 1; 741 NW2d 523 (2007) ("Only when the parents share joint physical custody and the proposed change of domicile would also constitute a change in the child's established custodial environment is it also necessary to evaluate whether the change of domicile would be in the child's best interest."); *Rittershaus*, 273 Mich App at 470-471 ("We reiterate that the trial court is not required to consider the best-interest factors until it first determines that the modification actually changes the

---

[8] Thus, MCL 722.31 was not applicable.

children's established custodial environment."); *Brown*, 260 Mich App at 598 n 7 (stating that only when "the relocation would result in a change in parenting time so great as to necessarily change the established custodial environment that an inquiry into the best interest factors is necessary."). Nowhere in *Pierron* did the Court explicitly overrule or modify any of this Court's prior published opinions.

Thus, *Pierron* differed from the present case in that it did not involve a change of domicile analysis under MCL 722.31(4) but, rather, focused on the general procedure put in place to resolve an impasse when parents cannot decide on important decisions affecting the welfare of the child. *Pierron*, 486 Mich at 85, citing MCL 722.25(1) and *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993).[9] We find that the situation presented in a change of domicile case under MCL 722.31 is distinguishable from the situation where two parents cannot agree on an important decision affecting a child's welfare. In the former, the decision involves more than the child—it also necessarily affects the relocating parent directly. Furthermore, MCL 722.31 is a specific statute that outlines the requirements necessary to grant a change of domicile. Conversely, the general provision of MCL 722.25 explicitly refers to the "best interests of the child." But as our Supreme Court has stated, " '[W]here a statute contains a general provision and a specific provision, the specific provision controls.' " *Duffy v Mich Dep't of*

---

[9] It is important to note that *Spires, Rittershaus*, and *Brown* all held that no best-interest analysis was necessary if the established custodial environment was not being altered even though they all had the benefit of this Court's earlier opinion in *Lombardo*, which stated that "a trial court must determine the best interests of the child in resolving disputes concerning 'important decisions affecting the welfare of the child' that arise between joint custodial parents." *Lombardo*, 202 Mich App at 160.

*Natural Resources*, 490 Mich 198, 215; 805 NW2d 399 (2011) (citation omitted). If the Legislature intended for the best-interest factors of MCL 722.21 to be evaluated in a change of domicile case, it easily could have done so. Instead, it limited the analysis to the factors enumerated in MCL 722.31(4).

### V. CONCLUSION

We conclude that the trial court did not abuse its discretion when it granted plaintiff's motion to change the child's domicile to Windsor. Furthermore, the court did not err when it concluded that the established custodial environment would not be affected. As a result, the trial court was not required to determine if defendant proved by a preponderance of the evidence that the move was in the best interests of the child.

Affirmed.

K. F. KELLY, J., concurred with WILDER, J.

JANSEN, P.J. (*concurring in part and dissenting in part*). I concur with the majority's conclusion that the circuit court did not err with regard to its evaluation of the change-of-residence factors of MCL 722.31(4), or its determination that plaintiff met her burden of establishing by a preponderance of the evidence that the move to Windsor, Ontario was warranted. I respectfully dissent, however, from the majority's conclusion that the circuit court properly determined that the move to Windsor would not alter the child's established custodial environment.

The circuit court correctly determined that an established custodial environment existed with both parents in this case. See *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008) (noting that "[a]n estab-

lished custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort"). I fully acknowledge that "[i]t is possible to have a change of domicile . . . without disturbing the established custodial environment." *Brown v Loveman*, 260 Mich App 576, 596; 680 NW2d 432 (2004); see also *Pierron v Pierron*, 282 Mich App 222, 249-250; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010); *DeGrow v DeGrow*, 112 Mich App 260, 267; 315 NW2d 915 (1982). However, on the facts of this case, I conclude that the move to Windsor, Ontario would change the child's established custodial environment and that the circuit court erred by determining that it would not.

Defendant has been closely involved in the child's upbringing since the child was born in 2005. Along with plaintiff, defendant has joint legal and physical custody of the child. The record evidence establishes that defendant consistently exercises his full complement of parenting time and spends additional time with the child whenever possible. Defendant spends time with the child both during the week and on weekends. In addition to defendant's regularly scheduled parenting time, he frequently brings the child lunch, has taken the child on vacations, and talks to the child on the telephone two or three times per day. Further, defendant is responsible for the vast majority of the child's transportation needs, and takes the child to all of his medical and dental appointments. Even plaintiff admits that defendant has an extremely close relationship with the child and that the child looks to defendant for guidance and discipline in his day-to-day life.

The majority concludes that plaintiff's move to Windsor with the child would not destroy defendant's strong

relationship with the child and would not render defendant a "weekend" parent. Consequently, according to the majority, the circuit court correctly determined that the move to Windsor would not affect the child's established custodial environment with defendant. I must respectfully disagree.

I realize that Canada is to be treated as a "state" for purposes of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, that Canada is a signatory to the Hague Convention on Child Abduction, and that Canada "has adopted specific and far-reaching legislation protecting the rights of noncustodial parents, including those who are not Canadian citizens." *Brausch v Brausch*, 283 Mich App 339, 354; 770 NW2d 77 (2009); see also MCL 722.1105; *Atchison v Atchison*, 256 Mich App 531, 536-537; 664 NW2d 249 (2003). But I nevertheless believe that one parent's act of moving to a *foreign country* with a minor child is both quantitatively and qualitatively different than the scenario presented by a mere interstate move with a minor child within the United States. Traveling from one state to another is relatively simple; it does not require a passport or any special papers, and does not subject the traveler to potentially lengthy stops or searches at the border between the states. Indeed, the United States Constitution implicitly guarantees the right to interstate travel, "a right that has been firmly established and repeatedly recognized." *United States v Guest*, 383 US 745, 757; 86 S Ct 1170; 16 L Ed 2d 239 (1966); see also *Griffin v Breckenridge*, 403 US 88, 105-106; 91 S Ct 1790; 29 L Ed 2d 338 (1971). By contrast, the freedom to travel outside the United States, including to and from Canada, is clearly accorded less stature than the right to interstate travel. *Califano v Aznavorian*, 439 US 170, 176-177; 99 S Ct 471; 58 L Ed 2d 435 (1978); *Haig v Agee*, 453 US 280, 306-307; 101 S Ct 2766; 69 L

Ed 2d 640 (1981). Particularly in today's post-9/11 world, the act of traveling to or from a foreign country, even if only Canada, has become a much more complicated, burdensome, and time-consuming prospect.

I realize that plaintiff has agreed to bring the child into the United States for defendant's parenting time so that defendant, himself, does not have to face the burdens of traveling to Canada to see the child. However, I still believe that plaintiff's international move with the child poses substantial difficulties for defendant. The circuit court determined that despite plaintiff's move to Windsor with the child, defendant would still be able to spend time and interact with the child on a regular basis. The circuit court further observed that, even though defendant might lose his overnight visits with the child during the week, this could be remedied by granting defendant an additional weekend of parenting time each month. But unlike a move to Ohio or Indiana, it strikes me that plaintiff's move to Canada will have the potential of significantly obstructing defendant's weekday visitation schedule. Neither the parties nor the circuit court can know for certain whether plaintiff will be able to bring the child to Michigan for all scheduled parenting time with defendant. For instance, what will happen if plaintiff must wait to cross the international border with the child or, worse yet, if the border is closed completely? While such questions are not germane in the context of interstate moves, they are certainly relevant in the context of international moves. In short, I agree with defendant that the unpredictable and time-consuming nature of crossing the international border may ultimately affect his weekday parenting-time schedule so greatly that he will have to opt out of weekday visitation altogether on certain occasions. Unlike the majority, I conclude that such a scenario would effectively relegate defendant to the role

of a weekend-only parent, thereby altering the child's established custodial environment with defendant. *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008).

On the facts before us, I conclude that plaintiff's move to Windsor with the child would alter the established custodial environment that currently exists with defendant. I believe that the circuit court's finding to the contrary was clearly against the great weight of the evidence. MCL 722.28; *Berger*, 277 Mich App at 705.

Once a circuit court has granted a party permission to remove a minor child from the state, and assuming that the party's move would effectively alter the child's established custodial environment, the court must undertake an analysis of the best-interest factors set forth in MCL 722.23 to determine whether the party can prove by clear and convincing evidence that the removal and consequent change in the established custodial environment will be in the child's best interests. *Brown*, 260 Mich App at 583. In the instant case, the circuit court granted plaintiff's request for permission to remove the child to Windsor. Moreover, as I have already explained, I believe that such a move would alter the child's established custodial environment with defendant. Accordingly, in my opinion, the circuit court should have undertaken an analysis of the best-interest factors to determine whether the move to Windsor and consequent change in the established custodial environment was in the child's best interests. *Id.* I would reverse the circuit court's determination that the move to Windsor will not affect the child's established custodial environment and remand this matter to the circuit court for a best-interests determination in accordance with *Brown* and MCL 722.23.