*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRUCE EDWARD KLEIN,

       Plaintiff-Appellee,

v

ADELA RUTH KLEIN,

       Defendant-Appellant.

UNPUBLISHED
May 18, 2023

No. 362783
Ingham Circuit Court
Family Division
LC No. 19-001189-DM

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order adopting the referee's recommendation to deny her motion for change of custody and parenting time. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties have two children together, BK and GK. In early 2020, the parties divorced, and the trial court granted them joint legal custody and granted plaintiff sole physical custody. Defendant subsequently moved for a change of custody and modification of parenting time. Defendant reasoned that plaintiff failed to communicate or coparent with her about school, transportation, counseling, medical appointments, and other matters involving the children. Defendant contended that GK desired to attend a different school district, was above-average in her intellectual capacity, and needed to be challenged academically. Finally, defendant argued that plaintiff had repeatedly lied to the trial court to the detriment of the children and that the children required a different home environment. Defendant requested at least equal time with the children.

The Friend of the Court referee recommended no change of custody. Defendant challenged this recommendation, and the referee conducted an evidentiary hearing. The referee ultimately recommended that plaintiff continue to have primary physical custody but that parenting time be slightly decreased for defendant during the school year in order to provide the children with more stability and consistency while attending school. The referee determined that the established

custodial environment would not change from this modification and that the change was in the children's best interests.

Defendant objected to the recommendation, and the trial court conducted a de novo review hearing. The trial court adopted the referee's recommendations for custody and parenting time. The trial court stated that it had interviewed the children and had considered their reasonable preferences, including GK's preference about changing schools. The trial court stated that "[t]he de novo hearing made it abundantly clear to this court that the [defendant]'s wishes and desires have been projected on to her children, causing them . . . a significant load to carry." The trial court ruled that, if the parties could not agree on a school for GK, that she would attend the school in her current district.

This appeal followed.

## II. ANALYSIS

## A. STANDARDS OF REVIEW

We review custody decisions for an abuse of discretion. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003). An abuse of discretion occurs "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010) (quotation marks and citation omitted). For findings of fact, we apply the great weight of the evidence standard. *Vodvarka*, 259 Mich App at 507. The trial court's findings "should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error," which occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Id*. at 508 (quotation marks and citations omitted). In other words, "[o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade*, 291 Mich App at 20-21 (quotation marks and citation omitted).

## B. DISCUSSION

Defendant argues that the trial court abused its discretion because its findings concerning the children's best interests were against the great weight of the evidence. We disagree.

When a party seeks a change in custody or proposed change in the prior judgment, the party must first show by a preponderance of the evidence that either a proper cause or a change of circumstances warrants the change. *Vodvarka*, 259 Mich App at 508-509. This determination must occur before the trial court may "consider whether an established custodial environment exists (thus establishing the burden of proof) and conduct a review of the best interest factors." *Id*. at 509. "[P]roper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken." *Id*. at 511. The moving party

must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors. [*Id*. at 512.]

To show a change of circumstances, the moving party

must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 513-514.]

Once this initial determination has been made, the trial court must determine whether there is an established custodial environment and review the statutory best-interest factors. *Id*. at 509. "The established custodial environment is the environment in which 'over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.' " *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010), quoting MCL 722.27(1)(c). If the proposed change "would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest." *Shade*, 291 Mich App at 23. However, when "the proposed change does not change the custodial environment . . . the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Id*.

The twelve statutory best-interest factors are set forth in MCL 722.23, under which the " 'best interests of the child' means the sum total of the following factors to be considered, evaluated, and determined by the court":

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

"Generally, the trial court must consider and explicitly state its findings and conclusions regarding each factor, and the failure to do so is usually reversible error." *LaFleche v Ybarra*, 242 Mich App 692, 700; 619 NW2d 738 (2000) (emphasis added).

## 1. FACTOR A

The first factor to be considered is the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court found that the children were "comfortable going to [plaintiff] for advice and they have been comfortable going to [plaintiff] for concerns and feelings they've had regarding [defendant]'s home environment at times." The evidence supported these findings. Plaintiff testified that the children looked to him and his wife for support and emotional help and that the children had told him that they wanted to spend more time at his house instead of defendant's. Defendant may disagree with such testimony, but whether the trial court found particular testimony persuasive is a question of credibility, and we will not disturb such decisions on appeal. See *Gagnon v Glowacki*, 295 Mich App 557, 568; 815 NW2d 141 (2012) (stating that "this Court must defer to the trial court on issues of credibility").

## 2. FACTOR B

The next factor is the "capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court agreed with the referee's findings that,

although both parents loved the children, it appeared that the children had a stronger bond with plaintiff. The referee determined that both parties had the capacity to provide love, affection, and guidance to the children. However, the referee expressed concern over defendant's ability to provide proper guidance. The referee cited defendant's relationships with multiple men, the flirting and sexually-suggestive messages with her business partner, and the fact that the children had been exposed to this conduct.

Plaintiff also testified that the children would come to him and his wife for support and emotional help and that the children wanted to spend more time at his house. Additionally, plaintiff stated that the children were doing well in school and that he helped them with their homework and online learning. There was also evidence in the form of text messages, photographs, trips, and disclosures made by the children to their counselor suggesting that defendant was romantically involved with two men in addition to her husband. Therefore, the evidence supported the trial court's finding that this factor favored plaintiff because he was able to offer better guidance than defendant.

### 3. FACTOR C

Factor C concerns the "capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that this factor favored neither party.

Plaintiff testified that he earned approximately $76,000 per year. Defendant owned a start-up business and also would make approximately $150 per day as a substitute teacher. There was no indication that the parties were unable to meet the children's needs, and each party took initiative to bring the children to medical appointments. Plaintiff testified that defendant had obtained a new doctor, counselor, and optometrist without consulting plaintiff. Defendant has failed to show on appeal why this factor should have favored her over plaintiff. Defendant may believe that she is better suited to provide for the children, but the evidence supported the determination that both parties could do so effectively.

### 4. FACTOR D

The next factor relates to the "length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court agreed with the referee's finding that plaintiff's home was more stable than defendant's. The referee expressed concern over defendant's neighborhood and whether the children felt comfortable at defendant's house. The testimony by the children's counselor and defendant supported that defendant's home had suffered from public urination and probable thefts of the family's property. Plaintiff's home environment exhibited none of these issues, and plaintiff testified that the children told him that they wanted to spend more time at his house. The trial court did not abuse its discretion when it found that this factor favored plaintiff because he had a more stable environment that the children preferred and were used to, where, in contrast, defendant's environment was problematic and the children were uncomfortable with it.

### 5. FACTOR E

Factor E requires the court to consider the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court adopted the referee's findings and drew specific attention to the medical needs of defendant's husband and determined that, when such issues were not properly addressed, it negatively impacted the home environment and children. The trial court also specifically mentioned defendant's relationships with her male friends. The referee expressed similar concerns especially as it related to the behavior of defendant's husband and the children's discomfort with him. There was also testimony suggesting that defendant carried on romantic relationships with multiple men in addition to her husband. Moreover, extensive testimony was presented about her husband's mental-health issues, and plaintiff testified that BK was "anxious" and "terrified" to be around him. Plaintiff further testified that defendant's husband had given away the children's bicycles and cats, and the children had expressed a preference toward plaintiff's home.

Therefore, the evidence supported the determination that this factor favored plaintiff because plaintiff's home environment was safer, more stable, and more permanent than defendant's, that the children preferred plaintiff's home, and that the children were clearly uncomfortable with defendant's living situation.

### 6. FACTOR F

Under Factor F, the court must consider the "moral fitness of the parties involved." MCL 722.23(f). The trial court adopted the referee's findings, highlighting specifically a recent case with Child Protective Services (CPS) involving defendant. The referee also cited defendant's criminal history, her two vacations with a male friend, and an incident in which she assaulted plaintiff with a shoe.

The testimony demonstrated that defendant had been placed on a central registry for child abuse and neglect following a CPS investigation about defendant's inappropriate behavior involving her walking naked around her house. Furthermore, the psychiatrist testified about the shoe assault, and defendant herself acknowledged that this incident had occurred (although she claimed it had been an accident). Defendant also acknowledged her prior guilty plea to animal neglect and subsequent probation violations and jail time. As previously discussed, defendant also appeared to be carrying on multiple romantic relationships with different men and exposing the children to inappropriate behavior.

Therefore, the evidence supported the trial court's conclusion that this factor favored plaintiff over defendant. Although defendant may disagree and contend that plaintiff's moral fitness is untenable, this argument concerns matters of credibility that are improper for appellate review. See *Gagnon*, 295 Mich App at 568.

### 7. FACTOR G

The next factor relates to the "mental and physical health of the parties involved." MCL 722.23(g). The trial court adopted the referee's findings and expressed concern with defendant's behavior and mental health; however, it also acknowledged that defendant was addressing her mental health.

The psychiatrist testified about an incident in which defendant became "violent" and broke dishes in the kitchen. As a result of such behavior, the children stayed with other family members. Moreover, as previously discussed, there was evidence that defendant was exposing the children to inappropriate behavior by walking around nude and her overt sexual affection with other men. Both the referee and trial court expressed overall concern with defendant's troublesome behavior. Therefore, the evidence supported the trial court's determination that this factor favored plaintiff.

## 8. FACTOR H

Under Factor H, the trial court must consider the "home, school, and community record of the child." MCL 722.23(h). The trial court adopted the referee's findings, who focused on defendant exposing the children to inappropriate content and adult matters. The referee also focused on defendant's home environment, the CPS case, and GK's preference against increasing defendant's parenting time.

As noted previously, there was testimony about a CPS case against defendant and the circumstances involved, GK's concerns with the area around defendant's house, and plaintiff's testimony that the children were doing well in school. Additionally, the children's counselor testified about concerns regarding defendant exposing the children to adult matters, such as the court case between the parties, and inappropriate content, such as her suggestive text messages with defendant's male friends. Moreover, the counselor testified that GK expressed that she did not want parenting time with defendant to be increased. Therefore, the evidence supported the trial court's determination that this factor favored plaintiff. The children were doing well in their current school placement at plaintiff's home. In contrast, defendant's home was unstable and made the children uncomfortable.

## 9. FACTOR I

Factor I relates to the "reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(i). Defendant argues that Factor I was not properly evaluated because the trial court failed to consider the reasonable preferences of the children. The record belies this contention. Both the referee and trial court explicitly stated that they interviewed the children privately and considered their reasonable preferences. Defendant's argument, therefore, lacks merit.

## 10. FACTOR J

Finally, Factor J is the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court agreed with the referee's recommendation and analysis that both parties were lacking in this area.

The parties disagreed about vaccination for the children; made numerous decisions without the other's input, such as changing medical providers, taking the children to important appointments, or filing applications for new schools; and had extensive trouble communicating with each other. Even plaintiff conceded that both he and defendant could "probably do a better job" of keeping each other informed about events relating to the children. The evidence presented showed that both parties demonstrated an inability to communicate with each other, to effectively

coparent, or to encourage a good relationship between the children and the other parent. Based on our review of the record, it appears that each party often utilized the children as a means to thwart the other. Defendant may disagree but this again addresses matters of credibility. See *Gagnon*, 295 Mich App at 568. We discern no error in the determination that this favored neither party.[1]

Affirmed.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[1] It is unclear from defendant's brief if she challenges the trial court's modification of parenting time. Although mentioned in her statement of questions presented, defendant provides no substantive analysis addressing the change of parenting time. To the extent that defendant does raise such a challenge, it has been abandoned. *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims.").