*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DALLAS COLEMAN,

        Plaintiff-Appellee,

v

ELIZABETH HUGGARD,

        Defendant-Appellant.

UNPUBLISHED
January 08, 2025
11:16 AM

No. 372042
Tuscola Circuit Court
Family Division
LC No. 23-032307-DM

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

In this custody dispute, defendant, Elizabeth Huggard, appeals as of right the trial court's order denying her motion for change of domicile for the parties' minor child, ARC. We affirm.

## I. BACKGROUND

The parties were married in 2020, and they had one child, ARC, together. At the time of the de novo review hearing, ARC was three years old. Plaintiff Dallas Coleman filed for divorce in January 2023 and, in July 2023, the trial court entered a judgment of divorce awarding the parties joint legal and joint physical custody of ARC. Plaintiff was given parenting time every other weekend from Friday after his work ended through Monday at 10:00 a.m. In November 2023, defendant filed a motion seeking a change of custody and domicile.[1] Defendant sought to change ARC's legal residence to Fort Campbell, Kentucky, which was an approximately nine-hour drive from plaintiff's residence. Defendant planned to marry her fiancé, Cody Huggard, in December 2023. Cody was in the United States Army and stationed at Fort Campbell. Defendant planned to move to Fort Campbell once she and Cody married, and she desired for ARC to accompany her. Defendant believed that the move would be in ARC's best interests.

---

[1] The request for change of custody, which was denied along with the request for change of domicile, is not raised in or pertinent to this appeal.

At the referee hearing, defendant testified that she was working on the weekends at a bar. She also testified that she was working on obtaining welding certifications. In furtherance of this, defendant planned to attend a two- to three-month program in Michigan. And, if the move to Fort Campbell was allowed, defendant planned to attend trade school in Kentucky. Defendant testified that the move would benefit ARC both mentally and financially. According to defendant, plaintiff had issues holding down a job, but plaintiff testified that he had never gone extended periods of time without work. Plaintiff further testified that he had been working for two years as a contractor at Amazon and that he had also held various full-time jobs over this period. Defendant testified that the move was in ARC's best interests because the schools around Fort Campbell would benefit ARC. Plaintiff opposed the move because he believed that it would take ARC away from her family and support system. Most of plaintiff's and defendant's respective families resided in Michigan. Defendant testified that plaintiff often did not exercise parenting time, but plaintiff testified that he always exercised parenting time unless he was working. Defendant was willing to maintain the current parenting-time schedule, which would require driving ARC back and forth to Michigan and Kentucky.

The referee concluded that defendant had failed to show by a preponderance of the evidence that ARC's domicile should be changed to Kentucky. Therefore, the referee recommended that the motion for change of domicile be denied. The referee examined the five factors set forth in MCL 722.31(4), known as the "*D'Onofrio* factors,"[2] and determined that factor (a) favored the move; factors (b), (c), and (d) did not favor the move; and factor (e) was inapplicable. Defendant filed an objection to this and sought a de novo review hearing in the trial court. Defendant argued that the five factors favored the change in domicile because the move would improve defendant's employment opportunities, there were multiple options available to maintain plaintiff's relationship with ARC, and plaintiff had frequently not complied with court orders.

The trial court conducted a de novo review hearing as requested. The testimony indicated that defendant was working as a full-time caregiver, and her family babysat ARC whenever defendant was working. Cody testified that he would be stationed at Fort Campbell for the next seven years unless he was deployed. Both Cody and defendant testified about certain attitude issues ARC had exhibited upon returning from plaintiff. Defendant acknowledged that it was not realistic to drive ARC nine hours every other weekend. Accordingly, defendant proposed that, since ARC would soon be starting school, a new schedule was warranted. Defendant was willing to give plaintiff more than two months in the summer as well as spring break; to split Christmas break and either split or rotate Thanksgiving break; and to give plaintiff any long weekends during the school year. Defendant again testified that plaintiff was often not exercising his parenting time, but plaintiff testified that he had sought extra parenting time with ARC, which defendant prevented.

The trial court denied defendant's motion to change ARC's domicile. After evaluating the *D'Onofrio* factors, the trial court determined that defendant had failed to show by a preponderance of the evidence that the change of domicile was supported. The trial court determined that none

---

[2] *D'Onofrio v D'Onofrio*, 144 NJ Super Court 200; 365 A2d 27 (Ch Div, 1976).

of the factors firmly supported the move. The trial court focused most on factor (a). The trial court determined that, although defendant had shown that the move would improve her own quality of life, she had failed to show that the move would improve ARC's quality of life as well. The trial court reasoned that defendant was working full-time and making more money than she had during the referee hearing, and that, in contrast, defendant had failed to show any job prospects in Kentucky. The trial court also observed that defendant's family helped care for ARC when defendant was working. For factor (b), the trial court determined that defendant was not attempting to frustrate plaintiff's parenting time; rather, defendant sought to be with her husband. The trial court additionally determined that both parties were exercising their respective parenting-time schedules. Although the trial court recognized the testimony about ARC's attitude changes, the court believed this "happens all the time. . . . And that's because you have a different set of household rules and a different person. And mother and father are mother and father. The child is always gonna change."

For factor (c), the trial court determined that driving back and forth was not realistic given ARC's young age. However, it acknowledged that there was a possible arrangement to maintain the quantity of time plaintiff currently had with ARC. The trial court further determined that both parties had complied with the court's orders. The trial court determined that factors (d) and (e) were inapplicable because the evidence failed to show that plaintiff's opposition was financially motivated or that there was any domestic violence. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court abused its discretion by denying her motion for change of domicile. More specifically, defendant challenges the trial court's findings regarding the *D'Onofrio* factors. According to defendant, these factors supported the change in domicile. We disagree.

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the 'great weight of the evidence' standard." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (citation omitted). An abuse of discretion occurs when "the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id*. (quotation marks and citations omitted). For questions of fact, this Court must not "substitute its judgment . . . unless the facts clearly preponderate in the opposite direction." *Id*. (cleaned up). However, if the trial court makes an error of law that influences its findings of fact, then our review is not limited to clear error. *Id*. at 324-325. Finally, for questions of law, this Court reviews the matter for clear legal error. *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Id*. Clear legal error requires remand for the trial court to apply the " 'proper legal framework' unless the error is harmless." *Id*. at 585, quoting *Rains*, 301 Mich App at 331.

MCL 722.31(1), of the Child Custody Act of 1970, MCL 722.21 *et seq*., provides in pertinent part:

> Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location

that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

This Court previously enumerated the four steps that a trial court must undertake in deciding whether to grant or deny a motion to change domicile:

First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325 (footnote omitted).]

MCL 722.31(4) lists the five factors that the trial court must consider:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

The burden is on the party seeking the change in domicile to show by a preponderance of the evidence that the change in domicile is warranted. *Rains*, 301 Mich App at 326-327. In resolving this question, "the child [must be] the primary focus in the court's deliberations . . . ." MCL 722.31(4).

Here, the trial court determined that defendant failed to show by a preponderance of the evidence that the *D'Onofrio* factors supported the change of domicile. Therefore, the trial court halted its analysis at step one of the four-step process. The trial court determined that factor (a) did not favor the move and that factors (d) and (e) were inapplicable.[3] It also appears that the trial court determined that factor (b) was neutral and that factor (c) at best slightly favored the change. Defendant has failed to show that evidence clearly preponderates in the opposite direction.

For factor (a), although defendant presented evidence of how her own quality of life would be improved by being with Cody, defendant presented little evidence of how ARC's quality of life would be improved. Defendant was working full-time in Michigan; in contrast, although she was in contact with what appears to be an organization to assist military spouses find jobs, defendant did not describe any actual job prospects in Kentucky. Although defendant testified that she planned to attend trade school in Kentucky, she also testified that she was planning to attend a similar program in Michigan. On appeal, defendant contends that Fort Campbell offered numerous schools, programs, and resources for military families living on or near the base. However, at the hearings, she presented virtually no evidence of this. Furthermore, the move would take ARC away from her support system. Most of the parties' respective families resided in Michigan, and defendant acknowledged that her own family cared for ARC when defendant was working. At the referee hearing, defendant summarily testified that the move would provide better mental and financial stability for ARC, but she provided little evidence in support. Moreover, she did not add additional evidence to that effect at the de novo hearing. Therefore, the evidence supported the trial court's conclusion that the move did not have the capacity to improve the quality of life for both ARC and defendant.

For factor (b), there was no indication that defendant was attempting to frustrate plaintiff's parenting time. Rather, the evidence suggested that defendant, who was newly married, desired to be with her husband. Additionally, the evidence supported the determination that plaintiff was exercising his parenting time. Plaintiff testified that he always exercised his parenting time except when working. At the de novo hearing, although defendant testified that this was not the case and that plaintiff would leave ARC with plaintiff's mother much of the time, defendant acknowledged that her testimony came from secondhand accounts, which the trial court determined were not credible. Such credibility determinations are left to the trial court, see *Gagnon v Glowacki*, 295 Mich App 557, 568; 815 NW2d 141 (2012), and defendant failed to call witnesses who could put forth firsthand accounts of plaintiff's supposed actions. Furthermore, although defendant presented evidence of attitude issues exhibited by ARC, we discern no error in the trial court's determination that such issues were minor and appeared normal given the circumstances. At best, this factor was neutral.

For factor (c), defendant acknowledged that driving nine hours every other weekend was not realistic. Accordingly, she suggested possible options to maintain plaintiff's relationship with ARC, including a parenting-time schedule giving him the majority of the summer and various school breaks. The trial court determined that requiring a three-year-old child to make a nine-hour trip each way every other weekend was not feasible. However, the trial court recognized that there

---

[3] Defendant concedes on appeal that factor (e) is inapplicable.

may be a possible arrangement that could continue to foster plaintiff's relationship with ARC. The trial court also determined that both parties had complied with the court's orders. Therefore, the facts supported weighing this factor either neutrally or slightly in favor of the move.

For factor (d), the trial court determined that this was inapplicable. The trial court acknowledged that the parties gave conflicting accounts concerning plaintiff's payment of child support. However, the trial court reasoned that no evidence was presented in the de novo hearing concerning whether plaintiff was current on child support. Moreover, the trial court reasoned that nothing had been presented to show that plaintiff's opposition was related to securing a financial advantage. On appeal, defendant asserts that plaintiff was behind on a significant portion of his child support. However, plaintiff testified that he was ordered to pay $16 per month in child support, and the child support order in the record confirms this. Apart from defendant's testimony, there is nothing in the record indicating that plaintiff was behind on support. The trial court found that defendant's testimony was not credible, and we discern no error based on the lack of evidence. See *id.*

## III. CONCLUSION

Only one of the *D'Onofrio* factors slightly favored the change of domicile; the rest did not. The trial court emphasized that defendant had failed to put forth adequate evidence showing how ARC's quality of life would be improved by the move. Rather, as the trial court explained, defendant had shown only how her own life would be improved. Our review of the trial court's findings does not convince us that the evidence clearly preponderates in the opposite direction.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates