# STATE OF MICHIGAN

# COURT OF APPEALS

GARY R. HUND,

        Plaintiff/Cross Defendant-Appellee,

v

NATALIE T. HUND,

        Defendant/Cross Plaintiff-
        Appellant.

UNPUBLISHED
July 6, 2017

No. 334313
Livingston Circuit Court
LC No. 12-047005-DM

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

In this post-divorce proceeding, defendant-mother moved to change the legal residence of the parties' son, OMH, to Canada. Plaintiff-father objected and filed his own motion to gain primary physical custody. The trial court ultimately entered an order that denied defendant's motion and granted plaintiff's motion. For the reasons provided below, we affirm.

## I. BASIC FACTS

The parties married on August 16, 2008, and had OMH during the marriage. Plaintiff filed for divorce on December 17, 2012. At the time, OMH and the parties lived in Pinckney, Michigan. The trial court entered a consent judgment of divorce on August 13, 2013, which granted the parties joint legal custody, defendant primary physical custody, and plaintiff parenting time.

After the divorce, the parties cohabitated in the marital home for 14 months. Plaintiff moved for a change of custody in July 2014, when defendant expressed a desire to move out of the home. While the motion was pending, defendant moved to Howell in October 2014. The parties entered into a consent order regarding custody and parenting time on November 28, 2014. The parties agreed to share legal custody and to award defendant primary physical custody. The schedule alternated week to week but resulted in OMH spending 9 out of 14 nights with defendant.

In January 2015, defendant met Ryan Tiernay, who lived in Sarnia, Ontario, Canada. Defendant introduced OMH to Tiernay a month later. Tiernay had previously been married and had week-on/week-off joint custody with his daughter and son. In August 2015, plaintiff moved to Livonia. Defendant and Tiernay married in September 2015. Defendant testified that she

-1-

temporarily moved in with her parents in Marine City in December 2015 because plaintiff would not allow her and OMH to move to Sarnia.

On January 15, 2016, defendant moved the circuit court to change OMH's legal residence to Sarnia. Defendant argued that the move had the capacity to improve both her life and OMH's life. Plaintiff opposed defendant's motion and denied, among other things, that the move would improve OMH's quality of life. Plaintiff also sought to gain primary physical custody over OMH.

A referee held a two-day hearing that addressed both motions. Defendant was asked what she planned to do if the trial court did not grant her request to change OMH's legal residence to Sarnia. Defendant responded that she would move to Port Huron, a location "within the hundred miles" from OMH's legal residence at the time of the judgment of divorce and "five miles" from Tiernay in Sarnia.

The referee recommended denial of defendant's motion to change domicile because defendant failed to show by a preponderance of the evidence that the factors listed under MCL 722.31(4) supported the move. Notably, when deciding on whether the move to Sarnia had the capacity to improve defendant's and OMH's lives, the referee analyzed how the proposed situation in Sarnia compared to defendant's and OMH's prior situation in Howell. In doing so, the referee found that there was "[l]ittle testimony" regarding how a move to Sarnia "is an improvement over the quality of life which she enjoyed . . . in Howell" and that it was "less certain" whether the change in domicile would improve OMH's life.

The referee then recommended to grant plaintiff's motion to change custody. The referee determined that OMH had an established custodial environment with both parties and that plaintiff proved by clear and convincing evidence that, under the best-interests factors of MCL 722.23, it was in OMH's best interests to modify that arrangement.

In light of the referee's decision to grant plaintiff's request to give him primary physical custody of OMH, the referee noted that a new parenting time schedule was needed. The referee considered factors under then MCL 722.27a(6)[1] to determine the schedule. Ultimately, the referee determined that during the school year, defendant is to be awarded (1) weekday parenting time from after school until 8:00 p.m. twice a week and (2) every other weekend. And during the summer, the parties are to alternate on a week on/week off schedule.

Defendant objected to the referee's recommendation. However, the trial court ultimately adopted all of the referee's recommendations.

## I. STANDARDS OF REVIEW

---

[1] At the time of the proceedings, MCL 722.27a(6) contained the parenting-time best-interest factors. But effective August 1, 2016, those factors were moved to MCL 722.27a(7). 2016 PA 96.

We review whether the trial court properly interpreted MCL 722.31 de novo. *Eickelberg v Eickelberg*, 309 Mich App 694, 698; 871 NW2d 561 (2015). We affirm custody orders[2] " 'unless the trial judge made findings of fact against the great weight of evidence[,] committed a palpable abuse of discretion[,] or [made] a clear legal error on a major issue.' " *Butler v Simmons-Butler*, 308 Mich App 195, 200; 863 NW2d 677 (2014), quoting MCL 722.28. Specifically, we review factual findings, such as a trial court's findings under the best-interest factors, "under the great weight of the evidence standard." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009). Thus, we " 'may not substitute [our] judgment on questions of fact unless the facts clearly preponderate in the opposite direction.' " *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013), quoting *McKimmy v Melling*, 291 Mich App 577, 581; 805 NW2d 615 (2011). We review a trial court's ultimate decisions on a motion for a change of domicile and a motion to change custody for an abuse of discretion. *Yachcik v Yachcik*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 333834), slip op, p 3. In these contexts, a court abuses its discretion when it chooses a result that "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014).

## II. DEFENDANT'S MOTION TO CHANGE DOMICILE

MCL 722.31 governs the proposed change of domicile in this case and provides as follows:

(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

(2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. . . .

* * *

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

---

[2] "Custody orders" include orders that modify parenting time. *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010).

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

Further, "[t]he party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted." *McKimmy*, 291 Mich App at 582; see also *Rains*, 301 Mich App at 325.

Here, the trial court found that defendant failed to show by a preponderance of the evidence that the MCL 722.31(4) factors supported a change in legal residence. The court specifically found that factors (a) and (c) "weigh[] against granting the motion," with the other factors being essentially neutral.

For factor (a), the court noted that defendant's current residence in Marine City was a temporary one, a situation which was created by defendant, herself. Accordingly, the court thought it proper to consider defendant's prior residence in Howell as the baseline for deciding whether the move to Sarnia had the capacity to improve the quality of life for defendant and OMH. Defendant argues on appeal that the trial court erred when it considered defendant's "former life and economic situation in Howell" instead of her actual situation in Marine City.

We hold that the trial court did not err as a matter of law when it gave little weight to the fact that plaintiff was *temporarily* living with her parents in Marine City at the time the motion was decided. We note that nothing in MCL 722.31(4)(a) states that a court must limit its analysis to a movant's *precise*, current situation. Instead, the statute simply requires a court to decide "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent." Because the statute requires an inquiry into whether there would be the potential for *improvement* if the motion is granted, it follows that the inquiry involves a comparison between the situation where the motion is granted and the situation where the motion is denied. Cf. *Vodvarka v Grasmeyer*, 259 Mich App 499, 514; 675 NW2d 847 (2003) (noting that to evaluate a "change," it is necessary to compare two sets of circumstances).

Here, the trial court found that defendant failed to prove that moving to Sarnia had the capacity to improve her and OMH's life. While a movant's actual situation at the time the

motion is filed certainly is relevant, there is nothing in the statute to require a court to not take into consideration any voluntary steps the movant took to lower her and her child's quality of life, when a higher level was attainable. This prevents any party from engaging in gamesmanship, where a movant voluntarily reduces the quality of life, although fully capable of maintaining a higher level, and then uses that lower quality of life as a basis to move out of the state to a "better" situation with the child.[3] We stress that the statute's focus is on whether the move has the *capacity* to improve the quality of life for both the child and the relocating parent. See *Gagnon v Glowacki*, 295 Mich App 557, 567; 815 NW2d 141 (2012). Because the statute is concerned with *capacities*, it necessarily deals with *potentials*. See *Merriam-Webster's College Dictionary* (11th ed) (defining "capacity," in pertinent part, as "the potential . . . for . . . accommodating" and the "potential for treating, experiencing, or appreciating"). Such an analysis necessarily requires a view of what quality of life is *available* to the movant in both scenarios. The fact that a movant voluntarily takes a lower paying job or voluntarily moves into a lesser-quality-of-life situation, when the movant was able to maintain a higher lifestyle, is relevant in determining whether the move has the capacity to improve the movant's and the child's life.[4] Simply put, the statute requires a court to consider whether the proposed move has the potential to improve the movant's and the child's life. When doing so, the court, when evaluating the potential for an improved quality of life, can in its discretion consider whether the movant currently is under-utilizing any potential to have a higher quality of life. Accordingly, the trial court did not commit an error of law when it did precisely that.[5]

---

[3] We stress that our ruling is not to be construed as finding that defendant was engaging in any type of gamesmanship to "best" the system. Instead, it is clear that she simply moved to Marine City to be closer to her husband in Sarnia. But although defendant may have had altruistic motives in the move to Marine City, it does not diminish the fact that it was a temporary situation and using that as a baseline for comparison purposes would not further the purpose of the statute.

[4] While this Court in *Gagnon* did not directly address this issue, it tacitly approved of our view when, in response to the defendant's argument that the "plaintiff and her mother created the alleged crisis so that the plaintiff could move to [Canada]," the Court deferred to the trial court's findings because such an issue "ultimately involves credibility determinations." *Gagnon*, 295 Mich App at 568. Thus, the Court took no exception to the notion that the fact a movant takes steps to unnecessarily reduce her quality of life is something that can be considered by the trial court.

Indeed, we find this concept akin to the concept of imputed income, where, for purposes of child support, a parent's income is determined to be what he or she has the ability to earn— not what he or she actually earns. *Carlson v Carlson*, 293 Mich App 203, 205-206; 809 NW2d 612 (2011); see also *Stallworth v Stallworth*, 275 Mich App 282, 286-287; 738 NW2d 264 ("A trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn.").

[5] We do agree, however, that in this instance the trial court should not have relied on defendant's prior situation in Howell, as it was established that if the motion to relocate was denied,

Furthermore, we hold that the trial court's finding that factor (a) weighed against granting defendant's motion is not against the great weight of evidence. Defendant claims that the court should have considered how a move to Sarnia would have resulted in economic improvements to OMH's life. Defendant's reliance on *Gagnon* is misplaced. While "[i]t is well established that the relocating parent's increased earning potential may improve a child's quality of life," *Gagnon*, 295 Mich App at 567 (quotation marks and citation omitted), this concept is not entirely applicable. There was no testimony that defendant would have an "increased earning potential" in Sarnia. Defendant concedes in her brief on appeal that because of her husband's income, she would not have to work. Furthermore, if she worked, defendant planned to perform the same type of work she performed in Michigan. There was no evidence introduced that showed that her earning capacity as a hygienist was higher in Canada rather than Michigan or that there was a lack of employment opportunities in Michigan. Indeed, on the contrary, defendant testified that because of "the exchange rate[,] it makes more sense for me to work in the States." This is distinguishable from the situation in *Gagnon*, where the movant was unable to find employment in Michigan, had no access to a car in Michigan, but had a job offer in Canada, access to a vehicle in Canada, and free childcare available in Canada. *Id.* at 567. Moreover, defendant seems to take the position that she could only benefit from her husband's income if she lived in Sarnia. But there is no evidence to support this implication. Indeed, regardless of where defendant lived, she was married to Tiernay. There is nothing in the record to indicate that Tiernay's income could not have been used to support her while she and OMH lived in Michigan. Defendant also claims that OMH's life could be improved by access to the Sarnia school system. However, because a different metric and grading system was used to rate the Sarnia and Livonia schools,[6] it is unclear whether Sarnia schools are better than Livonia schools. Further, there was no specific evidence as to *how* attending the bilingual school in Sarnia had the capacity to improve OMH's quality of life. Finally, defendant argues that her marriage to Tiernay should be viewed as a positive, rather than a negative, because Michigan public policy favors remarriage. Defendant cites *Van v Zahorik*, 460 Mich 320, 330-333; 597 NW2d 15 (1999), in support of her claim but fails to explain how a public policy favoring marriage translates into a finding that placing OMH into the home of defendant's new husband, whom OMH only knew for a few months, would improve his quality of life. As a result, the trial court's finding that this factor weighed in favor of denying defendant's motion is not against the great weight of evidence.

Defendant also argues that the trial court should have concluded that factor (c) favored a change in legal residence because it adopted the referee's finding that "it is possible to order a modification of the parenting time schedule which would allow an opportunity to preserve the

defendant was going to move to Port Huron. Thus, because no court approval was needed for a move to Port Huron, the court should have used that location when deciding if the move to Sarnia had the capacity to be an improved situation over residing in Port Huron. But, as discussed, *infra*, any reliance on or citing of Howell is harmless, as the court's specific findings did not rely on a Howell residence.

[6] As the referee noted, there was nothing in the record that discussed any other school districts, although defendant testified that it was her intention to reside in Port Huron if her motion to move was denied.

parental relationship" between OMH and plaintiff "[i]f the change in domicile request was granted." But the statute also directs the trial court to consider "whether each parent is likely to comply with the modification." MCL 722.31(4)(c). And the referee further concluded that it was uncertain "whether [d]efendant would comply with any modification in parenting time if permitted to move to Canada." This conclusion is supported by plaintiff's testimony and therefore is not against the great weight of evidence. Moreover, defendant's continued reliance on *Gagnon* is misplaced. In *Gagnon*, the Court ruled that if the plaintiff received an additional weekend of parenting time a month, it could allay the loss of weekday parenting time, which would assuredly result from the move across international borders. *Gagnon*, 295 Mich App at 569. Plus, the trial court in *Gagnon* found that the parties had a history of cooperation regarding parenting time, which suggested that this new arrangement would be complied with as well. *Id.* Neither of these situations is present here. First, defendant only proposed to have plaintiff maintain his parenting time every other weekend and, if plaintiff wanted, he could have dinner with OMH during the week. Defendant further wanted OMH's weekend schedule with her to coincide with the weekend schedule Tiernay had with his children from a previous marriage. Second, as already noted, the trial court here found that it was questionable whether defendant would comply with a new parenting time schedule. Additionally, in *Gagnon*, the plaintiff father lived in Farmington Hills, and the defendant's move to Windsor resulted in the parties living approximately 30 miles away from each other. *Id.* at 561, 563.[7] The distance between Livonia, where plaintiff lives, and Sarnia, where defendant wanted to move, is approximately 80 miles. Thus, large amount of time involved in traveling between these two locations further makes the comparison to *Gagnon* inapposite.

Defendant also argues that the trial court erred when it found that factors (d) and (e) did not favor the grant of the motion to relocate. Defendant claims that these factors should have been treated as "neutral" instead. Notably, the court did not state that these factors weighed *against* the motion; instead, the court merely found that they *did not favor* the motion. Thus, because there was no finding that they weighed in favor of either side, the overall finding, by definition, is neutral. Defendant cites no caselaw that supports her view that the trial court must use the term "neutral" in these circumstances. Accordingly, we hold that the trial court's findings on these two factors are not against the great weight of evidence.

Therefore, with the trial court's individual findings on the MCL 722.31(4) factors not being against the great weight of evidence, we hold that its overall finding that defendant failed to prove by a preponderance of the evidence that the move was warranted also is not against the great weight of evidence. Importantly, two of the factors were found to weigh against defendant, while the other three were neutral. This is more than sufficient to show that defendant failed to meet her evidentiary burden. As a result, the trial court did not abuse its discretion when it denied defendant's motion to change her domicile to Sarnia.

## III. PLAINTIFF'S MOTION TO CHANGE CUSTODY

---

[7] Although the *Gagnon* opinion provided the cities where the parties lived, we take judicial notice of the distance between them.

A child's custody can only be modified " 'for proper cause shown or because of [a] change of circumstances . . . .' " *In re AP*, 283 Mich App 574, 600; 770 NW2d 403 (2009), quoting MCL 722.27(1)(c). Once shown,[8] the movant must prove that the proposed modification to the current custody order is in the best interests of the child. *Id.* at 602. However, the burden of persuasion for the movant differs if the proposed change in custody alters any established custodial environment.[9] If the proposed change would not alter any established custodial environment, then the movant must prove by a preponderance of the evidence that the change is in the child's best interests. See *Pierron v Pierron*, 486 Mich 81, 93; 782 NW2d 480 (2010). On the other hand, if the proposed change would alter the child's established custodial environment, then the movant must prove by clear and convincing evidence that the change in in the child's best interests. MCL 722.27(1)(c); *Pierron*, 486 Mich at 92-93.

Once the court has determined the applicable burden, it must then determine whether the proposed change is in the best interests of the child. This determination requires an evaluation of the best-interest factors listed in MCL 722.23:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

---

[8] The dissent notes that we failed to address whether plaintiff met this threshold inquiry at the trial court. While it is true, it is important to clarify that defendant did not raise this issue at the trial court or in her brief on appeal. See *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004) ("Ordinarily, we do not address issues not raised below or on appeal . . . ."). The case that the dissent primarily relies on, *Lieberman v Orr*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 333816), does not alter this Court's long-standing view on judicial restraint, as the appellant in *Lieberman* specifically raised the issue of "proper cause or change in circumstances" in her statement of the questions presented in her brief on appeal.

[9] An "established custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

The trial court need not weigh the factors equally. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). But it must "state [its] factual finding and conclusions under each . . . factor" so that the record allows "this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

Here, the trial court found, and the parties agree, that OMH had an established custodial environment with both parties. Therefore, plaintiff, as the moving party, bore the burden to show by clear and convincing evidence that a change in the custodial environment was in OMH's best interests. The court found that factors (b), (c), (d), (e), and (h) favored plaintiff,[10] with the others being neutral. The court also found that, with these factors, plaintiff proved by clear and convincing evidence that the change in custody was in OMH's best interests.

Defendant claims that the trial court erred when it found that best-interest factors (b), (c), (d), (e), and (h) favored plaintiff and that the court should have considered additional information under factor (*l*).

Factor (b) addresses "[t]he capacity and disposition of the parties . . . to give [OMH] love, affection, and guidance and to continue the education and raising of [OMH] in his . . . religion or creed, if any." MCL 722.23(b). The court found that the parties were fairly equal on this factor, but it noted that defendant removed OMH from Down on the Farm preschool, failed to enroll

---

[10] Although the court did not expressly state as such, as discussed *infra*, factor (*l*) could be viewed as favoring plaintiff.

-9-

OMH in a new preschool program, and stopped taking OMH to church. Because the record supports these findings, we cannot say that the trial court erred when it concluded that this factor "slightly" favored plaintiff.

Factor (c) governs the parties "capacity and disposition . . . to provide [OMH] with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). The trial court found that both parties made purchases for OMH and attended OMH's medical appointments. However, the court also found that defendant was resistant to using fluoride toothpaste on OMH and resistant to getting OMH vaccinated. The court also noted how defendant occasionally gave OMH candy when he woke up in the middle of the night over plaintiff's objections. Although the court did not explicitly say so, it implied that OMH's severe dental situation, which consisted of eight cavities, two crowns, and two baby root canals, was, in part, attributable to defendant's care of OMH. Indeed, defendant herself admitted that she changed her habits with OMH after the extensive dental damage was discovered and started using fluoride toothpaste. Regarding the immunizations, the court found that plaintiff was in favor of getting OMH immunized, but defendant was against it. Apparently, defendant feared, with no supporting evidence, that OMH might suffer a reaction from some vaccinations. With these facts, we hold that the trial court's finding that factor (c) favored plaintiff is not against the great weight of evidence.

Factor (d) addresses "[t]he length of time [OMH] has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court found that this factor "slightly" favored plaintiff. This finding is not against the great weight of evidence. The court found that both parties have the ability to provide OMH a *safe* environment. However, the court found that plaintiff had a better chance of providing a *stable* environment. After the parties left the marital home, plaintiff lived in one location in Livonia. Plaintiff testified that he planned to remain there until after OMH graduated from high school. On the other hand, defendant lived in three places after moving out of the marital home, with one more move planned. At the time of the hearing, defendant lived with her parents on a temporary basis in Marine City and planned to live somewhere in Port Huron now that her motion to relocate to Sarnia was denied. Simply put, the court's finding that defendant's actions "created a lack of stability for OMH" is not against the great weight of evidence.

Factor (e) addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found that "[t]he current custodial situation" was "inconsistent" and not appropriate. The court primarily relied on the fact that OMH currently moved between three homes: where he lived with his mother and grandparents in Marine City, his mother's husband's home in Sarnia, and his father's home in Livonia. The court "consider[ed] the desirability of maintaining three homes rather than two for OMH" in light of defendant's intent to maintain a home in Port Huron *and* with Tiernay in Sarnia if her motion to change OMH's domicile was denied. In doing so, the court concluded that granting plaintiff primary physical custody obviated the need for defendant to maintain a home in Port Huron, which then "provides a more permanent structure for OMH." And the court noted that such a conclusion did not "split [OMH] from a family unit which he has come to enjoy" in light of the "short term of the relationships" with his stepfamily and OMH not yet living with his stepfamily. Again, we cannot conclude that the trial court's findings are against the great weight of evidence.

Factor (h) focuses on OMH's "home, school, and community record." MCL 722.23(h). The trial court found that this factor "slightly" favored plaintiff. The court noted that after withdrawing OMH from Down on the Farm, defendant never enrolled him in any other similar program. Plaintiff, however, took steps to get OMH admitted to a preschool program in the Livonia schools. Further, the court found that OMH is enrolled in skating programs in Livonia and has two friends in Livonia that he skates with. The court, through the referee's findings, also noted that defendant is "transient" and, while "[i]t is assume that she will find appropriate housing, . . . the location and environment remains speculative." In view of this evidence, the court did not err when it found that this factor slightly favored plaintiff.

Factor (*l*) allows a court to consider "[a]ny other factor . . . to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court and referee under this factor noted that, because defendant's motion to move to Sarnia was denied, it was confronted with whether OMH would primarily live in Livonia with plaintiff or in Port Huron with defendant.[11] But the court only had information regarding the Livonia schools. The trial court simply noted that without any information on the Port Huron schools, any comparative analysis between the two school districts would be speculative. Notably, the court did not expressly find that this factor weighed in favor of ether party; instead, it simply noted the impossible task of evaluating the Port Huron schools with nothing in the record on the topic. Arguably, because the there was evidence to show that the Livonia schools rated well, the fact that there was no evidence related to the Port Huron schools weighed against defendant in some fashion. To the extent the court's findings on this factor do weigh against defendant, it was not against the great of evidence.

Therefore, the trial court properly found that factors (b), (c), (d), (e), and (h) favored plaintiff and that factors (a), (f), (g), (i), (j), and (k) were neutral or not applicable. In light of this, we cannot conclude that the trial court's ultimate finding, that plaintiff proved by clear and convincing evidence that a change of custody was in the best interests of OMH, is against the great weight of evidence. Accordingly, the trial court did not abuse its discretion when it granted plaintiff's motion to change custody.

## IV. PARENTING TIME

Defendant also argues that the resulting award of parenting time is inadequate. Defendant claims that the court failed to account for the best interests of OMH. But she acknowledges that the court reviewed the parenting-time, best-interest factors under MCL 722.27a(6). Indeed, she does not specifically challenge any of the court's findings under MCL 722.27a(6). Instead, she argues more broadly that reducing OMH's overnights with her from 9 out of every 14 nights to 2 out of every 14 nights could not be in his best interests. While she is correct that she was awarded two overnights with OMH over a two-week period during the school year, she fails to acknowledge that she also was awarded four evenings with OMH over that two-week period. Thus, her contact with OMH over a two-week period is not just limited to two overnights—it consists of four evenings plus an entire weekend. Considering the awarded

---

[11] Recall that defendant stated that her intention was to move to Port Huron in the event her motion to relocate was denied.

schedule, we are not persuaded that this schedule prevents OMH from having a strong relationship with his mother.

Affirmed.

/s/ Kathleen Jansen
/s/ Henry William Saad