# STATE OF MICHIGAN

# COURT OF APPEALS

---

KARISTA EADS, also known as KARISTA
SMITH,

       Plaintiff-Appellee,

v

WALTER SCOTT,

       Defendant-Appellant.

UNPUBLISHED
September 13, 2018

No. 341902
Ogemaw Circuit Court
LC No. 12-658589-DS

---

Before: METER, P.J., and K. F. KELLY and GLEICHER, JJ.

PER CURIAM.

In *Eads v Scott*, unpublished per curiam opinion of the Court of Appeals, issued February 28, 2017 (Docket No. 333949), we vacated the circuit court's May 10, 2016 order granting Karista Eads's motion to change the domicile of the parties' son, SS, to a location more than 100 miles away and denying Walter Scott's motion to change custody because the circuit court considered the motions out of order and without complete analysis. On remand, the circuit court took supplemental evidence and again granted Eads's motion and denied Scott's. Although the court committed some errors in its analysis, all were harmless. We affirm.

## I. BACKGROUND

Eads and Scott were never married and ended their relationship shortly after SS's birth. In 2012, the parties entered a consent judgment awarding Eads sole physical custody of SS and ordering Scott to pay child support. The parties lived only 10 miles apart in the Rose City area and arranged for parenting time outside of the court system, with Scott caring for SS approximately three days each week.

In 2014, Eads earned her nursing degree. Eads's job search uncovered local positions with unacceptable hours and wages. She eventually accepted a position as a registered nurse in Flat Rock, working days and earning $5 or $6 more per hour than she would have earned in Ogemaw County. Despite a provision in the consent custody judgment requiring court permission to move more than 100 miles away, Eads moved with SS (and her teenaged daughter A) to Flat Rock, approximately 170 miles south of Rose City. Scott filed a motion to enforce the change-of-domicile provision in the 2012 judgment and requested primary physical custody of SS. In the meantime, the parties began sharing custody of SS on alternating weeks.

-1-

In December of 2014, the circuit court verbally ruled that Eads had violated the custody order and ordered the parties to continue their alternating weekly parenting-time schedule. However, this order was never reduced to writing. Eads then filed a motion seeking retroactive permission for her move to Flat Rock. A month later, Eads married Myron Eads (Myron) and the pair bought a home in a family-filled subdivision in Flat Rock. In addition to Eads's two children, Myron moved with two minor children of whom he had shared custody. The home was also frequented by Myron's two adult children and their offspring.

A hearing referee considered the parties' motions and recommended that the circuit court deny Eads's motion to change SS's domicile, opining that the move was not in SS's best interests. Eads objected to the referee's findings and the court conducted a full evidentiary hearing. As described by this Court in *Eads*, unpub op at 2:

> Following the hearing, the trial court declined to adopt the referee's recommendation. The court first found that there was an established custodial environment with both parents. It then stated that, based on this finding, "in order to move, there has to be clear and convincing evidence." It also stated, "There is a change of circumstances, because one parent wants to move and that's a change of circumstances, so I can address the move and I can address the custody issue."
>
> Next, the court found that (1) [Eads] was not moving to frustrate [Scott's] parenting time or relationship with [SS]; (2) it was possible to modify the parenting time schedule in a way that would preserve and foster [SS's] relationship with each parent, and it was likely that both parents would comply with such a modification; (3) [Scott's] opposition to the move was not motivated by a desire to obtain a financial advantage with regard to a support obligation; (4) there was not enough evidence regarding domestic violence to consider that factor in determining whether the change in domicile was permissible; and (5) the change in domicile had the capacity of improving [SS's] and [Eads's] quality of life. Accordingly, the court found "by clear and convincing evidence that there are statutory grounds . . . to allow [Eads] to change her legal residence at this point."
>
> The court then stated, "So, now I have to decide where custody is," noting, before considering the best-interest factors, that (1) sole physical custody previously had been granted to [Eads], (2) there was an established custodial environment with both parents, and (3) there had been a change in circumstances. The court found that nearly all of the best-interest factors were equal. It did note, however, that [Eads] encouraged [SS's] religious involvement, while [Scott] did not, and that [Eads] was slightly more involved with [SS's] education. It further noted that [SS] had a close relationship with a sibling in [Eads's] household, and that [Eads] would be able to spend more time with [SS] in light of the parties' work schedules. After reiterating that it had "so little to go on in where this child goes," and that it had "to look at the very small minute things to be in the best interest of [SS]," the court found that "it is, by clear and convincing evidence, in the best interest of [SS], given [his] relationship with the other children with [Eads], that [SS] continues in the physical custody of [Eads] at this time." The

-2-

court then ordered that [Scott] be afforded parenting time during the first three weekends of every month, with some exceptions, and every other week during the summer, along with "a standard holiday parenting time schedule."

The court order entered in May 2016, and SS started kindergarten in Flat Rock in September.

Scott appealed the circuit court's order and this Court agreed that the circuit court's procedural errors required new proceedings. Specifically, this Court held that the circuit court must first consider the change of domicile motion applying the four-step approach of *Rains v Rains*, 301 Mich App 313; 836 NW2d 709 (2013). Under this analysis, the court (1) " 'must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile' "; (2) if so, " 'determine whether an established custodial environment exists' "; (3) if so, " 'determine whether the change of domicile would modify or alter that established custodial environment' "; and (4) if so, " 'determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.' " *Eads*, unpub op at 3-4, quoting *Rains*, 301 Mich App at 325.

The circuit court technically completed the first and second steps of the *Rains* analysis, this Court held. *Eads*, unpub op at 4-5. "However, the trial court's analysis of the change in domicile issue stopped there." *Id*. at 5. The circuit court instead switched tracks and addressed Scott's custody change motion, considering the best interest factors of MCL 722.23 as they related to that motion, not the change of domicile motion. The circuit court was required to conclude its four-step analysis of the domicile change motion before addressing the custody change motion, this Court continued. *Id*. The error was not clearly harmless, this Court held:

> [W]e are hesitant to assume from the lower court record in this case that the trial court would have determined that [Eads] established, by clear and convincing evidence, that the move was in [SS's] best interests, especially given the trial court's observation that it had "so little to go on in where this child goes," and its repeated references to the difficulty that it experienced in deciding what was best for [SS] under the instant circumstances because "it's really close for both" parents. [*Id*. at 6.]

On remand, the court took additional evidence before resolving the motions placed back before it. The court considered the pros and cons surrounding each parties' home environments, the parties' historic relationship, the parties' work schedules, and SS's performance in kindergarten among other factors. The court conducted the *Rains* analysis as directed by this Court and ultimately granted Eads's motion to change SS's domicile to Flat Rock and denied Scott's motion to change the custody arrangement. Scott again appeals.

## II. STANDARDS OF REVIEW

We employ three different standards when reviewing a trial court's decision in a child-custody dispute. We review the trial court's findings of fact to determine if they are against the great weight of the evidence, we review

-3-

discretionary decisions for an abuse of discretion, and we review questions of law for clear error. [*Frowner v Smith*, 296 Mich App 374, 380; 820 NW2d 235 (2012).]

A circuit court's ruling on a motion to change a child's domicile or to change custody are discretionary. *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017). " '[A]n abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias.' " *Id.*, quoting *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). When reviewing the circuit court's factual findings, we " 'may not substitute [our] judgment . . . unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error.' " *Id.* at 31-32, quoting *Rains*, 301 Mich App at 324-325.

## III. IMPROPER TEMPORARY CUSTODY ORDER

Scott first argues that the circuit court erred when it issued the December 2014 temporary custody order without reducing it to writing, and therefore that the parties should have adhered to the 2012 custody order after this Court vacated the 2016 custody order. Defendant is correct. The 2012 order, which provided that SS was to live in Rose City, was the last written order properly entered by the court. However, because (1) the 2012 order allowed Eads sole physical custody over SS and required the parties to arrange for parenting time by agreement, (2) the parties engaged in alternating weekly parenting time at their own discretion following this Court's vacation of the 2016 order, and (3) the circuit court ultimately conducted the appropriate analysis of the parties' cross-motions, any resulting error was harmless.

A trial court " 'speaks through its written orders and judgments, not through its oral pronouncements.' " *Cassidy v Cassidy*, 318 Mich App 463, 509; 899 NW2d 65 (2017), quoting *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Accordingly, the 2014 oral temporary custody order was not an order to which the circuit court could revert after this Court's vacation of the circuit court's 2016 order.

Moreover, the 2014 temporary custody order was improperly entered, compounding the error of the circuit court in reverting to it. Although a trial court may modify its custody orders for proper cause or because of a change in circumstances until a child reaches 18, MCL 722.27(1)(c);[1] MCL 722.1102(c); *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010), the court must first take testimony and analyze whether the change would be in the child's best interests. *Grew v Knox*, 265 Mich App 333, 337-338; 694 NW2d 772 (2005). An alteration of a custody arrangement via temporary order does not require proper cause or change in circumstances. However, the temporary custody order is just that, temporary. The court must go on to conduct an evidentiary hearing, consider the child's best interests, and make findings on

---

[1] The version of MCL 722.27(1)(c) in effect at the time of the commencement of these proceedings contained a similar provision. See MCL 277.27(1)(c), as amended by 2005 PA 328, effective December 28, 2005.

the record in order to issue a permanent order. *Thompson v Thompson*, 261 Mich App 353, 357; 683 NW2d 250 (2004). The circuit court did not fulfill its duty in this regard in 2014.

Yet, relief is not warranted when the court's errors are harmless. MCR 2.613(A). An error is harmless if it is "not decisive to the outcome" in a case. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007). The circuit court has now conducted the necessary analysis and still determined that allowing Eads to change SS's domicile was in the SS's best interests. As noted by Scott, this decision was colored by evidence of SS's home life with Eads established in violation of the court's 2012 custody judgment. But the focus is on SS's best interests, not Eads's wrongful conduct. As held in *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995), the focus must be on the child's circumstances, not on how those circumstances were created. Accordingly, "it makes no difference whether that environment was created by a court order, without a court order, *in violation of a court order*, or by a court order that was subsequently reversed." *Id*. at 388-389 (emphasis added). The court was required to consider SS's circumstances as is, and Scott cannot establish a remediable harm.

## IV. CHANGE OF DOMICILE

Scott next contends that the circuit court's findings of fact under MCL 722.31(4)(a), (d), and (e) were against the great weight of the evidence.

Under MCL 722.31(1),

> [a] child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

However, the legal residence of a child under the jurisdiction of the court can be altered pursuant to MCL 722.31(4), which states:

> Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations[.]

The statute provides five factors for the court's consideration. To be successful in a motion for a change in domicile of a minor child, the moving parent must establish that the change is warranted by a preponderance of the evidence. *Rains*, 301 Mich App at 325.

MCL 722.31(4)(a) provides for consideration of whether a move "has the capacity to improve the quality of life for both the child and the relocating parent." Scott argues that the circuit court inappropriately compared Eads's income and schedule as a nurse in Flat Rock with her previous income and schedule as a bartender in Ogemaw County. Scott further contends that Eads's failure to apply for any nursing positions in Ogemaw County necessarily invalidated her

testimony that she compared her position in Flat Rock to equivalent jobs in Ogemaw County. Scott is mistaken.

A relocating parent's increase in earning potential may improve the quality of a child's life. *Brown v Loveman*, 260 Mich App 576, 601; 680 NW2d 432 (2004). In its analysis of factor (a), the circuit court expressly compared Eads's position as a nurse in Flat Rock to a similar position in an Ogemaw County hospital. Eads searched for nursing positions in the Ogemaw County area. Although she never actually applied for any of those positions, she did research the wages and position schedules. Eads learned that she would earn $5 or $6 less per hour as a nurse in Ogemaw County and would likely have to work night shifts to start. Because Eads testified that she investigated nursing positions in Ogemaw County, the evidence did not clearly preponderate against the trial court's finding. Moreover, it appears that the court's brief reference to Eads's former schedule as a bartender did not impact its decision.

Scott challenges the circuit court's finding that SS was thriving in Flat Rock. Specifically, Scott notes that SS was threatened with expulsion and received low marks on his report card. A child's performance in school is relevant under this factor. *Yachcik*, 319 Mich App at 41-42. Although SS struggled with certain subjects, he performed well in others. However, SS had been threatened with either suspension or expulsion due to displays of aggressive behavior. Such extreme penalties indicate potential underlying problems that need to be addressed if SS is to continue to make positive academic strides, and undermine the notion that SS was "thriving" in his school community. Further, SS began his kindergarten year only after Eads had already taken him to Flat Rock. SS has no school record in Ogemaw County to make a comparison and Eads produced no evidence that SS's current school bore any significant advantages over schools in Ogemaw County. Accordingly, Eads failed to meet her burden of showing that SS's enrollment in his current elementary program was an *improvement* over the quality of education he might receive in Ogemaw County. See *id*. at 42. The circuit court's finding in this regard, therefore, went against the great weight of the evidence.

Scott argues that the proximity of SS's bus stop and friends in Flat Rock was not an improvement over his situation in Ogemaw County. A child's contacts in a proposed new domicile are relevant under this factor. *Id*. at 44. The evidence established that Eads has a large yard with a pool, swing set, and horseshoe pits. Adjoining properties also have playsets that the neighborhood children share. Scott's yard, on the other hand, was largely sand without growing grass. In this regard, Eads demonstrated that the environment available for SS to play in is superior in the Flat Rock residence. And it appears that the court only mentioned the bus stop location to support its finding that Eads lived in a close neighborhood. The court's ruling in this regard was not against the great weight of the evidence.

Scott contends that the court did not consider SS's relationship with his extended family in the Rose City area. It is appropriate for a trial court to consider the potential benefit of a child remaining close with his or her extended family. *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007). Such proximity would be particularly instrumental to obtaining child care. *Id*. at 466-467. However, "the role of the extended family cannot be the determining factor in denying a change of domicile." *Phillips v Jordan*, 241 Mich App 17, 31; 614 NW2d 183 (2000). Regardless, that a trial court fails to articulate its consideration of specific facts does

not inherently mean that its factual findings went against the great weight of the evidence. See *Yachcik*, 319 Mich App at 45.

In any event, we discern no error in this regard. SS has relatives on both sides of his family in the Rose City area. SS continues to see his maternal relatives frequently. However, the record suggests that SS rarely saw his paternal relatives, except his older half-sister, even before his move. His current inaccessibility to his paternal extended family is therefore largely irrelevant.

Overall, despite small flaws in fact-finding, the circuit court's determination that factor (a) weighed in favor of Eads's motion to change SS's domicile was not against the great weight of the evidence.

Scott next contends that the trial court erroneously determined that his objection to SS's move was "motivated by a desire to secure a financial advantage with respect to a support obligation" and thereby improperly weighed MCL 722.31(4)(d). In its original analysis in 2016, the trial court found just the opposite. On remand, however, the court reasoned:

> [T]he fact that [Scott] does not want to pay support during the time [SS] has been with [Eads] based upon the appeal concerns the court that his motivation is partly due to a support obligation. Whether or not the matter was vacated and remanded does not take away his obligation to support his child. [SS] was residing with [Eads] during the appeal process and [Scott] is still obligated to pay support based upon the number of overnights, not based upon the change of domicile appeal. However, [Scott] does not believe he should have to pay support even though [SS] was not with him and [Eads] was providing for his primary care.

The circuit court clearly erred and misinterpreted the arguments of Scott's counsel in this regard. At the June 20, 2017 hearing on Scott's motion for relief from judgment and to reinstate prior orders, defense counsel expressly indicated that Scott was not requesting that the trial court release him from his support obligations already incurred. Rather, Scott requested that the court eliminate his child support obligations as the parties moved back into an alternating weekly parenting time schedule for the summer, as it had during the previous summer. Scott actually asked that his support obligation be calculated based on the number of overnights with each parent. As this number was equal during the summer, he asked that his support obligation be eliminated during that time only.

Nothing about Scott's request suggested that he sought to prevent his child's move to permanently eliminate his support obligation. No new evidence supported the trial court's change of heart on this issue. Accordingly, the trial court's ruling that factor (d) weighed in favor of changing SS's domicile was against the great weight of the evidence.

Scott also challenges the trial court's findings of fact with regard to factor (e)— "Domestic violence, regardless of whether the violence was directed against or witnessed by the child." Prior to the 2016 order, Eads presented evidence that Scott had committed an act of domestic violence against her in the past, before their child was born. During the evidentiary hearing on remand, Eads presented the testimony of Scott's ex-girlfriend that Scott also

committed acts of domestic violence against her. Eads further testified at this hearing that Scott's adult daughter once accused her father of violence against her. The circuit court found this new evidence credible and determined that this factor now weighed in Eads's favor. We must defer to the trial court on issues of credibility. *Gagnon v Glowacki*, 295 Mich App 557, 568; 815 NW2d 141 (2012). And the Supreme Court specifically noted in *Sunde v Sunde*, 488 Mich 917, 917; 789 NW2d 491 (2010) (emphasis added), that a trial court may not disregard evidence of "the defendant's *history* of domestic violence" when analyzing factor (e). Accordingly, the circuit court initially erred in disregarding evidence of Scott's prior history of domestic violence and corrected that error on remand. The court's ruling was not against the great weight of the evidence.

Overall, it is true that the trial court's factual findings under factor (d) went against the great weight of the evidence. However, there is no record indication that the court weighed factor (d) more heavily than any other factor. Where all other statutory factors were properly weighed in Eads's favor and where the trial court's findings of fact under those factors were, for the most part, supported by the evidence, Scott's argument that the trial court abused its discretion in granting Eads's motion to change domicile lacks merit.

## V. BEST INTERESTS

After determining that the MCL 722.31(4) factors weighed in favor of Eads's domicile change request, the court determined that SS still had an established custodial environment with both parents and that the move would not change that. The court then analyzed the factors of MCL 722.23 to determine if the change of domicile would be SS's best interests. The court referred back to this analysis in denying Scott's motion for a change in custody. Scott now challenges the court's factual findings under MCL 722.23(b), (c), (d), (e), (h), (j), (k), and (*l*) in relation to both the change of domicile and change of custody motions.

We first note that the circuit court held Eads to the wrong burden of proof. The court specifically found that the change of domicile would not alter SS's established custodial environment. In such situations, the moving parent has the burden of proving that the domiciliary or custodial modification is in the child's best interests only by a preponderance of the evidence. *Shade*, 291 Mich App at 23. The court required Eads to prove her motion by clear and convincing evidence, a higher threshold. Scott actually benefitted from this error. Scott, on the other hand, did seek to change SS's established custodial environment. Eads had enjoyed primary physical custody of SS since the couple's separation. Scott sought to become SS's primary physical custodian. Accordingly, Scott was required to support his motion by clear and convincing evidence as required by the trial court.

MCL 722.23 provides that in rendering child custody decisions, the court must consider and evaluate the best interests of the child, which "means the sum total" of a list of factors. When analyzing these factors, the court must state its factual findings and conclusions under each best interest factor. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 451-452; 705 NW2d 144 (2005). However, the court "need not include consideration of every piece of evidence entered and argument raised by the parties." *Id*. at 452. Instead, the record need only be sufficient for this Court to determine whether the trial court's factual findings went against the great weight of the evidence. *Id*. In doing so, we must defer to the trial court's assessment of

witness credibility and the weight to be given to individual factors. *Kessler v Kessler*, 295 Mich App 54, 64; 811 NW2d 39 (2011).

MCL 722.23(b) requires the court to consider "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." Scott mischaracterizes the record evidence in contending that the trial court erroneously determined that Eads provides for SS's religious education. Contrary to Scott's argument, Eads specifically testified that she and SS had started attending church in Flat Rock. Moreover, Eads's father is a pastor and Eads and SS keep in close contact with him, allowing the grandfather to continue fostering SS's religion. Eads testified that she prays with SS every night. Scott, on the other hand, indicated only that he keeps a bible in the house and allowed SS to attend one-day of vacation bible school while in his care. He specifically indicated that he did not want to use his parenting time to take SS to church.

In relation to SS's secular education, the court also ruled in Eads's favor. This portion of the court's ruling is less persuasive. The court held it against Scott that he did not help SS complete assignments in a summer workbook that was required for school. However, Eads admitted that she did not tell Scott about the workbook. Once she did, Scott and SS did complete the assignments. Eads should not be rewarded for such gamesmanship. The court also improperly ignored that SS had struggled in kindergarten, both behaviorally and in some academic areas. Overall, however, Eads is the parent with SS during the school week. She is the parent who assists SS with his homework and studying on a day-to-day basis. Accordingly, although the court made some factual errors, the court's ultimate determination that factor (b) weighed in Eads's favor was supported by the record.

MCL 722.23(c) takes into account "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." Under this factor, the court recognized that both parents presented evidence that they can easily adjust their work schedules to provide for SS's needs. But, the court concluded, Eads had a greater capacity to leave work suddenly if SS became ill. We agree with Scott that his witness testified that Scott could leave work to care for SS if he was ill and the court's finding in this regard was clearly erroneous. We also agree with Scott that the court may have blown out of proportion an accident suffered by SS while in his care. SS was injured when he fell out a golf cart driven by his sister's 18-year-old boyfriend. Scott, who is a fire chief, and SS's sister, who was studying to be a nurse, both examined SS and determined that a hospital visit was not required. Indeed, Eads examined SS the next day and similarly determined medical treatment was unnecessary. However, the remainder of the court's findings under this factor were supported. The court noted that Eads had taken the lead over the years in arranging SS's medical and dental appointments. Although Scott had medical insurance, he had not covered SS. When Eads changed jobs, she and SS were left without insurance for 90 days. Eads was left to secure insurance for her child through the state. At the most, however, this factor could have been viewed as neutral rather than favorable to Eads. No underlying errors in analyzing the evidence under factor (c) would alter the result in this case.

Factor (d) weighs "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(e) takes into account "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." The court aptly noted that SS has lived primarily with Eads his entire life and has resided in a stable home with her husband and their other children since he was three. Scott, on the other hand, had only recently become romantically involved with a woman and there was no guarantee of permanence in that family unit. Although Scott points to other evidence that the court did not expressly consider in its analysis, this does not mean that the court overlooked those facts. See *Kessler*, 295 Mich App at 65. Accordingly, the court did not err in this regard and properly weighed these factors in Eads's favor.

MCL 722.23(h) considers "[t]he home, school, and community record of the child." The court again erred in counting against Scott that he did not complete summer homework with SS when Eads purposefully did not tell Scott about it. The court focused only on that evidence when weighing this factor in Eads's favor. Rather, the court should have considered the highly relevant evidence that SS had serious behavioral issues in school and that both parents attended meetings at the school to address this issue. Accordingly, the court's favoring Eads under this factor was against the great weight of the evidence.

The court also found that MCL 722.23(j)—"[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents"—weighed in Eads's favor. A close review of the record reveals evidence on both sides of this issue. Scott ensured that SS purchased presents for his mother for Christmas, Mother's Day and her birthday. Eads did not return this favor. Both parents ensured that SS telephoned the other parent while in his or her care. However, there were concerning facts weighing against Scott under this factor. Eads testified that Scott made disparaging remarks about her in front of SS, such as accusing her of stealing SS's kindergarten year from him. Eads tried to share a school scrapbook she made with Scott and then Scott refused to return it. There was evidence of Scott's refusal to communicate relevant information to Eads during his parenting time. The court was concerned with Scott's testimony that "he will only work with [Eads] if he gets custody" and that he would attempt to extend these proceedings if the trial court did not grant his motion, even if it meant continuing this conflict until SS turned 18. Further, Scott denied Eads her parenting time over two consecutive Christmas vacations, requiring the court to award makeup parenting time. Given this evidence, we cannot find that the court's weighing of this factor was against the great weight of the evidence.

MCL 722.23(k) takes into account "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." In finding in Eads's favor under this factor, the court considered evidence that Scott had committed domestic violence against both Eads and the mother of his daughter. "[D]omestic violence is an issue with [Scott]," the court noted, suggesting that it may be an issue again in the future. We discern no error in the court's determination that Scott might engage in domestic violence in the future with another romantic partner, affecting his son.

-10-

MCL 722.23(*l*) provides for consideration of "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." In weighing this factor in Eads's favor, the court found it in SS's best interests to keep him in Eads's home with his sister and that SS would have to attend daycare after school in Scott's home, but not in Eads's. These facts were supported by record evidence and we discern no ground to interfere with the court's judgment.

Ultimately, the court's factual assessment under the best-interest factors was supported by the evidence, for the most part. Even though the court committed some errors, the majority of the factors still weighed in favor of granting Eads's motion to change SS's domicile and against Scott's bid for primary custody. As such, we have no ground to disturb the trial court's orders.

We affirm.

/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher