*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERNESTINE MOORE,

      Plaintiff-Appellant,

v

CHRISTOPHER FORBERS,

      Defendant-Appellee.

UNPUBLISHED
January 20, 2022

No. 357296
Wayne Circuit Court
LC No. 10-107844-DM

Before: GLEICHER, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's opinion and order denying her motion to change the domicile of the parties' minor child, BF, from Michigan to San Antonio, Texas. For the reasons set forth in this opinion, we affirm in part, vacate and remand in part.

## I. BACKGROUND

Plaintiff and defendant were married in 2007, and divorced in June 2011. The divorce judgment awarded the parties joint physical and legal custody of BF, who was one-year-old at the time of the divorce, with BF's primary residence being with plaintiff. Defendant was awarded parenting time with BF every other weekend and every Wednesday evening. The parties also alternated parenting time with BF on holidays and defendant was permitted to have two uninterrupted one-week periods with BF each summer.

In January 2020, plaintiff lost her employment. On June 29, 2020, plaintiff filed a motion to change BF's domicile to San Antonio, Texas. Plaintiff alleged that defendant did not consistently exercise his parenting time, that he failed to call BF on her tenth birthday, which was "a court ordered phone call day," and that she had previously appeared in court on numerous occasions "to inform the court of [defendant's] failure to fully utilize his parenting time and to address [plaintiff's] concerns about [BF's] safety during [defendant's] parenting time." Plaintiff alleged that she had been unemployed since January 2020, and that her job search was "significantly affected by the current global pandemic[.]" Plaintiff attributed her inability to find employment in Michigan on "the highly competitive local job market and high unemployment rate." Plaintiff also alleged that her more than 20 years of experience as an attorney, coupled with

-1-

her skill set and expertise made it challenging for her to obtain employment because most employment opportunities involved employers who were looking for "more junior candidates." Plaintiff characterized her work as "highly specialized," and her skill set as not easily transferable to other positions within the legal field, and she further alleged that traditional law firms were not possibilities for her because she did not have "a portable book of business to support her years of experience." Plaintiff stated that she had applied for a number of positions for which she was over and underqualified outside her area of specialty, including law firms, governmental agencies, and even employment outside the legal field, but she had received only one phone interview for a legal recruiter position in Michigan.

Plaintiff alleged that because she was not able to find employment in Michigan, she sought employment opportunities outside of Michigan, and because she has been licensed to practice law in Texas since 2014, she was able to secure a position in her field in San Antonio, Texas. Plaintiff's new employer had requested that she start work as soon as possible, and plaintiff hoped to move to Texas with BF before the beginning of the new school in August 2020. Plaintiff also stated that she had a support network of family and friends in Texas, including an aunt and cousins.

Following a 10-day evidentiary hearing, which began in August 2020 and concluded in March 2021, the trial court issued a written opinion and order denying plaintiff's motion to change BF's domicile to Texas. Plaintiff now appeals that decision.

## II. CHANGE OF DOMICILE

Plaintiff argues that the trial court made findings of fact that were against the great weight of the evidence and abused its discretion by denying her motion to change BF's domicile to Texas. In particular, plaintiff argues that the trial court's findings with respect to the factors under MCL 722.31(4) are against the great weight of the evidence.

## A. STANDARD OF REVIEW

A trial court's decision on a motion for a change of domicile is reviewed for an abuse of discretion. *Moote v Moote*, 329 Mich App 474, 477-478; 942 NW2d 660 (2019). In a child custody case, the trial court abuses its discretion when its decision can be said to be " ' palpably and grossly violative of fact and logic . . . .' " *Id*. at 477-478, quoting *Fletcher v Fletcher*, 447 Mich 871, 879; 526 NW2d 889 (1994); see also *Kostreva v Kostreva*, ___ Mich App ___, ___ ; ___ NW2d ___ (2021) (Docket Nos. 352029; 353316); slip op at 2 n 1. Review of the trial court's findings of fact are subject to the following standards:

> In child custody disputes, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. Thus, a trial court's findings, including the trial court's findings in applying the MCL 722.31 factors, should be affirmed unless the evidence clearly preponderates in the opposite direction. *Pierron*, 486 Mich at 85; see also *Gagnon v Glowacki*, 295 Mich App 557, 565; 815 NW2d 141 (2012). In reviewing a trial court's findings, this Court should defer to the trial court's

determination of credibility. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Further, this Court may not substitute its judgment on questions of fact "unless the facts clearly preponderate in the opposite direction." *Gagnon*, 295 Mich App at 565 (quotation marks and citation omitted).

See also *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006) (applying these same standards to review of a trial court's findings regarding the existence of an established custodial environment).

## B. ANALYSIS

MCL 722.31, which addresses the legal residence of a child in a child custody action, governs the trial court's analysis of a party's request for a child's change of domicile. The statute provides, in pertinent part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.
>
> * * *
>
> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.
>
> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.
>
> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.
>
> (d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

As explained in *Moote*, 329 Mich App at 480, quoting *Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013), a trial court must apply a four-part analysis when considering a parent's request to change a child's domicile more than 100 miles:

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio*[1] factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.

Initially, plaintiff asserts that the trial court used an incorrect legal standard, and erred by finding that her proposed move to San Antonio would not "dramatically improve" her and BF's life. While plaintiff correctly asserts that MCL 722.31(a) requires only that the trial court consider "[w]hether the legal residence change has the *capacity* to improve the quality of life for both the child and the relocating parent," it is clear from the trial court's decision that it was aware of this standard, particularly because it cited MCL 722.31(4)(a) verbatim in its written opinion and order.[2]

Plaintiff contends that the trial court clearly erred by finding that moving to San Antonio did not have the capacity to improve the quality of life for both plaintiff and BF, because plaintiff testified that she lost her job at ITC Holdings in January 2020, and despite an exhaustive employment search, her employment at USAA was the only job she could find. According to plaintiff, if she is not employed, she and BF will have to move from the West Bloomfield area, and she and BF will be without medical insurance in the midst of the COVID-19 pandemic.

The trial court's findings regarding this factor were based in part on an apparent determination that plaintiff's testimony that she could not find employment in Michigan, or in closer proximity to Michigan, was not credible. While this Court generally will defer to the trial court on matters of credibility, we note that plaintiff testified that after an exhaustive employment search that spanned the duration of the evidentiary hearing, she did not receive an invitation for an

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

[2] Specifically, the trial court wrote: "In coming to that decision, the Court must analyze the proposed move under the domicile factors, with the child as the primary focus. MCL 722.31. First, the Court must consider "whether the legal residence change has the capacity to improve the quality of life for the child and the relocating parent." MCL 722.31(4)(a)."

interview, or any job offers, other than with USAA. In our view, the trial court's statement that it did not *believe* plaintiff could find employment in Michigan, or closer to Michigan, while apparently reflecting its subjective belief, was not grounded in uncontroverted evidence that, in spite of plaintiff's efforts to secure work within 100 miles of BF's legal residence, she was not successful in doing so. For example, plaintiff testified that she was terminated from her employment with ITC Holdings in January 2020. Plaintiff further testified that immediately after losing her job at ITC Holdings, she began looking for another job, applying for at least 50, and up to 100 additional positions as an attorney, as well as paralegal positions. Plaintiff also testified that she used ziprecruiter.com and careerbuilder.com to look for employment, and she submitted an exhibit that listed all of the jobs that she had applied for. She denied being granted an interview for any of the positions for which she applied. During her job search, plaintiff reached out to her network to inform them that she was looking for a new position, she worked with legal recruiters, and went directly to the websites of potential employers, "all to no avail."

Plaintiff further explained that the COVID-19 pandemic affected her job search because employers placed open positions on hold. When she did not have success finding employment in Michigan, she expanded her job search to "connecting surrounding states," including Illinois, Ohio, Kentucky, Indiana, and Washington, D.C., and when she began to receive "several rejection letters from there," she expanded her search to Missouri and Texas. Plaintiff submitted an exhibit listing all of the jobs that she had applied for outside of Michigan, including any rejection letters that she received. In her rebuttal testimony in February 2021, plaintiff testified that she was now employed as a senior attorney for USAA, and had held that position for eight months. According to plaintiff, she had received nothing but positive feedback about her work performance for USAA. At the time of the evidentiary hearing, plaintiff was working remotely, but USAA had plans for its employees to return to work in-person, and plaintiff described her remote work arrangement as "temporary." Plaintiff testified that, given the size of USAA as an organization, there was ample opportunity for her to pursue career advancement. Even while employed by USAA, plaintiff continued her job search, looking into at least 20 to 30 different positions, with half of those positions in Michigan. Plaintiff explained that she had searched online for employment with ziprecruiter.com and Indeed.com, and she listed the several jobs that she had applied for since December 2020. Exhibits listing the more recent jobs that plaintiff applied for were admitted into evidence. Plaintiff continued to apply for jobs both in Michigan and out-of-state throughout the duration of the evidentiary hearing, but she did not receive any requests for interviews. Plaintiff estimated that, in all, she had applied for approximately another 100 jobs after she first testified in this matter.

While remaining deferential to the trial court's superior ability to gauge plaintiff's credibility, we would note that the evidence does not support the trial court's determination, and instead reflects that plaintiff strenuously looked for employment within 100 miles of BF's legal residence before accepting the only employment she was offered at USAA. Therefore, to the extent that the trial court concluded that plaintiff's testimony that she could not avail herself of employment opportunities closer to Michigan was not believable, we are of the view that the evidence preponderates in the opposite direction.

The trial court also found that, in a larger context, most of plaintiff's complaints and filings against defendant were "petty" and seeking "to paint [defendant] in a negative light." The trial court concluded that plaintiff's rationale with regard to the filing of so many motions with the trial

court was predicated on the trial court's finding that plaintiff was seeking to "limit [defendant's] parenting time as much as possible." Thus, within this context, the trial court apparently stated that the reason for plaintiff being unable to find employment in Michigan was predicated on plaintiff's ultimate goal of limiting defendant's parenting time as much as possible. Essentially the trial court held that plaintiff did not desire obtaining work in Michigan so as to deny defendant significant parenting time. However, even presuming that limiting defendant's parental time was plaintiff's ultimate goal, the evidence presented by plaintiff regarding her job searches within Michigan preponderate against the trial court's finding that plaintiff was unable to find a position in Michigan. Accordingly, we disagree with the trial court that plaintiff failed to establish by a preponderance of the evidence that MCL 722.31(4)(a) supported a change of domicile for BF.

The next factor involves the degree to which each parent has complied with, and used their time under the trial court's order governing parenting time with BF, and whether plaintiff's plan to change BF's legal residence "is inspired by [plaintiff's] desire to defeat or frustrate [defendant's] parenting time schedule." MCL 722.31(4)(b). Here, we conclude that the trial court's finding about plaintiff's ultimate goal applies. As noted, the trial court cited the highly litigious nature of these proceedings, and concluded that a "fair amount" of plaintiff's testimony "rehashed issues" that the court had ruled on in response to multiple prior motions, and that plaintiff had filed repeated motions "seeking to paint [defendant] in a negative light" with her apparent aim being to "limit [defendant's] parenting time as much as possible." Plaintiff challenges these findings, stating that the voluminous evidence regarding defendant not exercising all of his parenting time and not following the trial court's orders was introduced not to disparage defendant, but to allow the court to adequately assess the parties' past history in exercising their parenting time. Plaintiff asserts that the evidence preponderates against the trial court's finding that defendant had consistently exercised his parenting time in accordance with the parties' divorce judgment.

At the evidentiary hearing, plaintiff testified that defendant often missed his parenting time with BF, and she prepared a chart setting forth the days that defendant had missed each year. Plaintiff testified that she decided to prepare the chart after it became the "norm" for defendant to cancel his parenting time with BF, and then attempt to blame the missed time on plaintiff. Plaintiff also testified that she began keeping track of defendant's missed telephone calls with BF in 2016, when he would call "at all times of the night" knowing BF was asleep, and then place the responsibility on plaintiff for having missed the phone call time with BF.

With regard to holiday parenting time, plaintiff also testified that defendant did not begin to take his Thanksgiving parenting time with BF until 2017, although the parties' divorce judgment was entered in 2011, and it provided that he was to have parenting time with BF on alternating years. Defendant also did not begin exercising his full Christmas parenting time with BF until 2019, and before then had only exercised his allowed weekend parenting time. Defendant was also allowed parenting time with BF on his birthday every year, but had only exercised that parenting time once, when his birthday fell on a Wednesday evening when he was already supposed to have parenting time with her.

On cross-examination, defendant conceded that he had missed some parenting time with BF since the parties divorced in 2011 because of both business-related social events and events in his personal life, such as a ski trip in 2017. Defendant also admitted that over the years since the parties' divorce judgment was entered, he had missed some telephone calls with BF as ordered by

the court, but maintained that at the time of the evidentiary hearing he was regularly talking to BF on the telephone during his court-ordered telephone time on Mondays, Tuesdays, and Thursdays. Defendant stated that he had asked plaintiff for makeup parenting time for times he had missed, but plaintiff refused his request.

The trial court acknowledged that defendant missed some of his parenting time, but found that he exercised most of his parenting time in accordance with what was awarded in the parties' divorce judgment. Accordingly, the evidence demonstrated that defendant did not have a perfect record in exercising his parenting time, and the trial court acknowledged this fact. However, the evidence also showed that defendant was an attentive, involved father who supported BF with her academics, extracurricular activities, and in her personal life. We are not persuaded that the evidence clearly preponderates in the opposite direction of the trial court's finding that defendant exercised the majority of his parenting time.

MCL 722.31(4)(c) requires the trial court to weigh

[t]he degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

Plaintiff contends that the proposed parenting-time schedule that she suggested to the trial court, which would allow BF to spend the entire summer with defendant, would allow defendant to foster and maintain a relationship with BF. Citing *Moote*, 329 Mich App at 482, plaintiff further asserts that her willingness to allow defendant to exercise a considerable amount of parenting time with BF reflects that her motion to seek a change in domicile was not motivated by a desire to thwart defendant's parenting time with BF. In *Moote*, in the context of reviewing the trial court's findings with respect to MCL 722.31(4)(b) and (c), this Court noted that the plaintiff's proposed new parenting-time schedule would allow the defendant to "exercise substantial parenting time." *Moote*, 329 Mich App at 482. The proposed parenting-time schedule included extensive parenting time during the summer months, additional school breaks, one long weekend a month, and the ability for the child and the defendant to communicate over videoconferencing software. This Court agreed that the plaintiff's suggestions reflected that she was not trying to frustrate the parenting time of the other parent. Because the proposed parenting-time schedule would allow the defendant to exercise even more overnights with the child than under the existing parenting-time arrangement, this Court, observing that the revised parenting-time schedule was not required to be equal with its predecessor in all respects, concluded that the trial court's finding that the parent-child relationship would be preserved with the new parenting-time arrangement was not against the great weight of the evidence.

Conversely, in this case, the trial court determined that the proposed modification to defendant's parenting-time schedule would not allow the preservation and fostering of defendant and BF's relationship, particularly because allowing BF to move to San Antonio would limit defendant's ability to remain active and involved in her life. The trial court also noted that the parties had a great deal of animosity between them, and the acrimony would hinder their ability to

effectively co-parent. We affirm the trial court's factual findings on this issue because the evidence does not preponderate in the opposite direction. Defendant testified that he and BF share a very close relationship, and that they talk about the things that matter to her in her life and say her evening prayers together before she goes to bed at night. Defendant also testified that he and BF enjoy activities like cooking meals together and going out to dinner, that BF is close with his extended family, that defendant is involved in BF's basketball league, and that BF sings in defendant's church choir.

In sum, the trial court erred regarding plaintiff's efforts to obtain employment in Michigan thereby rendering the trial court's analysis of MCL 722.31(4)(a) void. We therefore vacate that portion of the trial court's analysis relative to MCL 722.31(4)(a) and remand to the trial court to determine whether it would have reached a different result had MCL 722.31(4)(a) been correctly decided.

At oral argument, defendant conceded that on remand it would be appropriate for the trial court to consider up to date information. We agree.

Affirmed in part, vacated and remanded in part. Neither party having prevailed in full no costs are awarded. MCR 7.219. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause